y 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-076-CV





STATE OF TEXAS AND TEXAS DEPARTMENT 


OF HIGHWAYS AND PUBLIC TRANSPORTATION,



 APPELLANTS


vs.





JOHN H. BIGGAR, TERRENCE KENDALL, DAVID HELFERT, 


AND EDMUND J. FLEMING, JR.,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 462,803, HONORABLE JOSEPH H. HART, JUDGE PRESIDING



 




 John H. Biggar, Terrence Kendall, David Helfert, and Edmund J. Fleming, Jr.
(collectively, "the landowners"), sued the State of Texas and the Texas Department of Highways
and Public Transportation (1) (collectively, "the State"), and Travis County ("the County") alleging
(1) inverse condemnation; (2) violations of the Fifth and Fourteenth Amendments to the United
States Constitution; and (3) causes of action under 42 U.S.C.A. §§ 1983, 1985 (West 1981). The
landowners settled with the County before trial. The trial court rendered judgment on a jury
verdict awarding the landowners $1.5 million in damages plus attorney's fees for $150,000. The
State appeals. We will affirm that portion of the judgment awarding damages and reverse as to
the award of attorney's fees.



THE CONTROVERSY



 The landowners own a tract of land abutting Ranch to Market Road 2222 in Austin,
Texas. In 1985, the landowners secured from the City of Austin an ordinance authorizing
construction of up to 210,000 square feet of office space on the tract, contingent upon a City-approved site development plan ("SDP"). The development potential embodied in the SDP greatly
enhanced the tract's value. Without the SDP, the tract had little development potential due to
restrictive development and zoning ordinances passed by the City after its approval of the
landowners' SDP. Hence, the tract's market value depended on the SDP.

 The SDP was scheduled to expire in May 1989 unless the landowners met certain
conditions. One of these required the landowners to secure an exchange of easements with the
State. (2) The SDP as approved showed a building placed atop a segment of the State's existing
channel easement on the tract. Although the channel easement was simply an unimproved portion
of the tract intended to provide natural drainage and handle runoff from R.M. 2222, the
landowners were not free to build on the State's property interest. To surmount this obstacle, the
landowners entered into negotiations with the State to exchange an equivalent portion of the tract
for the part of the State's easement on which the proposed building intruded. State law and
Department of Highways and Public Transportation rules provided a mechanism for such an
exchange. The exchange process entailed review and approval by a number of entities, including
various engineers from the district level of the Department of Highways and Public
Transportation, the County, the Federal Highway Administration, and the Office of the Attorney
General. In December 1988, after extensive interaction between the State's engineers (at the
district level) and the landowners' engineers to ensure that the exchanged portion would serve the
drainage needs as satisfactorily as the existing easement, the State gave its initial technical
approval for the exchange.

 Concurrently with the easement-exchange negotiations, the State was undertaking
a project to straighten the tortuous R.M. 2222. This effort required condemnation of rights-of-way along R.M. 2222. Because R.M. 2222 is a county road, the County was to pay for the land
acquisition while the State would bear the costs for designing and constructing the highway. The
new highway's design necessitated condemnation of part of the landowners' tract. The County
bid on the needed land, but the landowners refused its offers as too low. Apparently, the County
failed to account for the tract's commercial worth due to the office buildings approved in the SDP
and the deleterious effect the condemnation would have on the remainder's suitability for this
development.

 Indeed, when the County's appraisers investigated further, they discovered that
the SDP significantly increased the value of the landowners' tract proposed for the right-of-way. 
In a handwritten memorandum to a County attorney, one of the appraisers indicated that the
County must substantially increase the landowners' compensation because of the SDP; the
appraiser also observed that the SDP would expire in May 1989. To avoid this expiration, the
landowners had to exchange easements with the State before that date; the exchange never
occurred. On January 24, 1989, soon after its engineers had approved the technical elements of
the exchange, the State informed the landowners that it had reassessed the proposed exchange and
found it no longer in the State's best interest to proceed. The State refused to reconsider its
position. The City of Austin rejected the landowners' request to extend the May 1989 deadline,
and the SDP expired. Without the development potential represented by the SDP, the tract's value
plummeted.

 The landowners brought suit alleging that their property was taken or damaged as
a result of the State's refusal to proceed with the easement exchange. The landowners claimed
that the State, either on its own or at the request of the County, had ceased processing their
exchange application in order to reduce the value of their tract. They alleged that the State and
the County had thus violated their rights under the state and federal constitutions by failing to
grant the easement exchange and thereby devaluing not only the property to be condemned for the
right-of-way, but the remainder of the tract on which the office buildings were planned. After
settling with the County, the landowners proceeded to trial and secured a jury verdict awarding
damages against the State for its violation of the landowners' constitutional rights. The trial court
denied the State's motion for judgment non obstante veredicto (n.o.v.). Having perfected its
appeal, the State now advances three points of error, the first two challenging the trial court's
denial of its motion for judgment n.o.v. and the third urging that the court erred in failing to
dismiss the case based on the State's governmental immunity.



DISCUSSION



Governmental Immunity



 By its third point of error, the State claims that governmental immunity bars the
landowners' constitutional and statutory causes of action against it. (3) Governmental immunity
consists of two basic principles of law. First, the state as sovereign cannot be sued without its
permission. E.g., Hosner v. DeYoung, 1 Tex. 764, 769 (1847); Dillard v. Austin Indep. Sch.
Dist., 806 S.W.2d 589, 592 (Tex. App.--Austin 1991, writ denied). The doctrine bars a suit
against the State unless the State has expressly given its consent to be sued. See, e.g., Missouri
Pac. R.R. v. Brownsville Navigation Dist., 453 S.W.2d 812, 814 (Tex. 1970). Second, the State
has immunity from liability even though the State has consented to be sued. Id. at 813; Dillard,
806 S.W.2d at 592. 

 The State maintains that the landowners never obtained legislative permission to
bring their suit. We disagree. The Texas Supreme Court has held that governmental immunity
offers no shield against a claim for inverse condemnation brought pursuant to article I, section 17
of the Texas Constitution. (4) Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex. 1980). Rather
the constitution, by authorizing compensation for the taking, damaging or destruction of property,
waives a governmental entity's immunity from suit and immunity from liability. Id.; Dillard, 806
S.W.2d at 596. Were it otherwise, article I, section 17 could be nullified at the whim of the
legislature. The landowners thus had permission to bring their inverse condemnation claim. 
Because we will hold that the landowners stated a claim for inverse condemnation sufficient to
support the damages award, we need not reach the question whether their claims of federal
constitutional violations override the State's governmental immunity. We hold that governmental
immunity did not bar the landowners' inverse condemnation claim.

 The State also argues that the landowners have not stated a claim on their statutory
causes of action brought pursuant to 42 U.S.C.A. §§ 1983, 1985 (West 1981). Section 1983
creates a cause of action against a "person" who, under color of law, deprives the civil rights of
"any citizen of the United States or other person within the jurisdiction thereof." Similarly,
section 1985 creates a cause of action against "two or more persons" who conspire to interfere
with a citizen's civil rights. The United States Supreme Court recently held that a state is not a
person within the meaning of section 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58,
66-67 (1989). Although Congress has the power to override state immunity, section 1983 is not
an exercise of that authority. Id. If the State is not a person for purposes of section 1983, it is
likewise not a person for purposes of section 1985 and, therefore, the landowners are unable to
state a claim against the State under either statute. We sustain that portion of the State's third
point of error as it relates to the landowners' statutory claims, but overrule it as to the
constitutional claims.



The Constitutional Claims


 By its first and second points of error, the State alleges the trial court erred in
denying its motion for judgment n.o.v. because (1) the State had no legal duty to exchange
easements with the landowners, and (2) the landowners had no more than an "expectancy" that
the exchange would occur.




The Scope of Review

 Before addressing the substance of these arguments, we pause to discuss the scope
of review. A motion for judgment n.o.v. will be sustained only if a directed verdict would have
been proper. Tex. R. Civ. P. 301; Dodd v. Texas Farm Prods. Co., 576 S.W.2d 812, 815 (Tex.
1979). A party is entitled to a directed verdict when reasonable minds can draw only one
conclusion from the evidence. Collora v. Navarro, 574 S.W.2d 65, 68 (Tex. 1978). To sustain
a judgment n.o.v. on appeal, the court must determine that no evidence exists upon which the jury
could have made the findings. Fenwal, Inc. v. Mencio Sec., Inc., 686 S.W.2d 660, 663 (Tex.
App.--San Antonio 1985, writ ref'd n.r.e.). All evidence will be considered in the light most
favorable to the party against whom the motion is sought, and every reasonable intendment
deducible from the evidence will be indulged in that party's favor. Douglas v. Panama, Inc., 504
S.W.2d 776, 777 (Tex. 1974).

 As the above authorities indicate, the State's first and second points of error
constitute "no evidence" points. The State, while acknowledging as much in its appellate briefs,
does not directly challenge the evidence supporting the jury's findings. Rather, the State
maintains that the trial court was barred by rules of law from giving weight to any of the evidence
offered. See Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38
Tex. L. Rev. 361, 362 (1960). As the State summarizes its position, "Unless the Appellees have
a constitutionally protected property interest that entitles them to this exchange of easements, all
evidence presented by the Appellees at trial may be given no probative force at all to sustain the
verdict and judgment." The State's argument is essentially that the landowners failed to state a
claim necessary to support the damages awarded. Because the State assails neither the evidence
nor the jury findings based thereon, we shall focus our analysis on the question of whether the
landowners stated a claim under any of their constitutional causes of action.



Inverse Condemnation

 We turn first to the landowners' inverse-condemnation claim. The landowners
alleged that the State, by refusing to process the exchange, drastically reduced their tract's value
and precluded development that would have been allowed pursuant to the SDP. The State
maintains that because the decision to grant an exchange was discretionary, it had no legal duty
to do so and, therefore, it cannot be liable.

 For purposes of inverse condemnation, "property" susceptible of legal injury and
a corresponding right to compensation includes incorporeal property as well as tangible property. 
State v. Schmidt, 805 S.W.2d 25, 29-30 (Tex. App.--Austin 1991, writ granted). One such
incorporeal right is that of lawful development. See City of Austin v. Teague, 570 S.W.2d 389,
394 (Tex. 1978). In Teague, plaintiff-developers owned unimproved land zoned as a retail
business district. In seeking to develop the property, plaintiffs applied to the Austin Department
of Public Works for certain permits needed before development could occur. Due to public
pressure that the land be preserved as a "scenic easement," the City repeatedly denied plaintiffs'
permit applications, despite plaintiffs' compliance with all engineering, drainage, and structural
requirements. Id. at 390-91. The trial court found that the City's denial of the permits was
unauthorized, unreasonable, and arbitrary because it was intended (1) to prevent all development
of the plaintiffs' property and (2) to preserve the property as a scenic easement for the benefit of
the public. Id. at 391. Although this finding was not before the supreme court because the City
did not appeal it, we think it manifest that a governmental entity may not arbitrarily withhold
benefits from particular citizens to serve the government's own ends.

 The Teague court acknowledged as much, observing that a property owner may
recover damages "when the government's action against an economic interest of an owner is for
[the government's] own advantage." Id. at 393. The court then cited with approval another Texas
case presenting facts and issues closely resembling those of the instant case. See San Antonio
River Auth. v. Garrett Bros., 528 S.W.2d 266 (Tex. Civ. App.--San Antonio 1975, writ ref'd
n.r.e.). In Garrett Bros., the City of San Antonio denied utility permits for a proposed residential
subdivision because the City intended, sometime in the future, to acquire a portion of the
subdivision land by eminent domain for a dam site and a lake for recreation purposes. By
suppressing development of the property, the City sought to reduce its acquisition costs when it
exercised its eminent-domain powers. The court of appeals condemned this behavior, explaining:



[W]here the purpose of the governmental action is the prevention of development
of land that would increase the cost of a planned future acquisition of such land by
government . . . [the government] can no longer pretend to be acting as a neutral
arbiter. It is no longer an impartial weigher of the merits of competing interest[s]
among its citizens. Instead, it has placed a heavy governmental thumb on the
scales to insure that in the forthcoming dispute between it and one, or more, of its
citizens, the scales will tip in its own favor. . . . To permit government, as a
prospective purchaser of land, to give itself such an advantage is clearly
inconsistent with the doctrine that the cost of community benefits should be
distributed impartially among members of the community.



Id. at 274. The appellate court affirmed the trial-court judgment awarding Garrett Brothers actual
damages for the taking. Id. at 280.

 On the authority of Teague and Garrett Bros., we hold that the landowners stated
a claim for inverse condemnation when they pleaded facts alleging that they had a right to lawfully
develop their property and the State sought to suppress that right in order to secure an economic
advantage at the landowners' expense. The State nevertheless argues that Teague and Garrett
Bros. do not control this case because they dealt with the denial of permits, whereas this case
involves the State's refusal to exchange its real-property interest for a different one. We believe
the State draws too fine a distinction. All three cases concern the grant or denial of a government
benefit. In both Teague and Garrett Bros., the cities were obligated to allow property
development and to issue permits if the person desiring development and applying for the
necessary permits complied with applicable rules and regulations. We see no justification for
adopting the State's position merely because the discretionary benefit sought by the landowners
can be characterized as a real-property interest.

 Indeed, the State's contention that its easement, as a property interest, bears no
similarity to a permit does not withstand scrutiny. State law and agency rules create a system
whereby the State can dispose of its surplus property and petitioners can request property sales
and exchanges. The State, specifically the Texas Highway and Public Transportation Commission
(the "Commission"), is authorized by law to recommend to the Governor the sale of any real
property or interest therein, when that property is no longer needed for highway purposes. Tex.
Rev. Civ. Stat. Ann. art. 6673a, § 1(a) (West Supp. 1993). Further, the Governor may, upon
recommendation of the Commission, execute a deed exchanging any real property or interest
therein for any other real property or interest needed by the State for highway purposes. Id. §
1(c). The Commission may adopt rules as reasonably necessary to implement these provisions. 
Id. § 5. The Commission has adopted such rules, providing a specific mechanism whereby the
State can sell and exchange its real property. See State Dep't of High. & Pub. Transp., Right-of-Way Manual §§ 421.07-.08 (bk. 1, ed. 6 n.d.). The State insists that the particular easement in
question was not subject to exchange because it was not surplus but was being used and would
continue to be used for a public purpose. Given that the Commission's rules expressly provide
for an exchange even when the easement sought is not yet surplus, see Right-of-Way Manual §
421.08, this contention lacks merit.

 The State also asserts that, because the exchange provisions in both article 6673a
and the Commission Rules are couched in discretionary language, the State had no duty to
exchange easements. The State's discretion in granting an exchange is not, however, dispositive
of the issue before us. As shown by Teague and Garrett Bros., a governmental entity may not
arbitrarily deny to one applicant a benefit it grants to another. Record testimony from several
witnesses, including Charles Muery, the State's Right-of-Way Director for District 14, indicates
that the State routinely grants these exchanges. Indeed, none of the witnesses were aware of any
previous instance in which the State had denied an exchange once the applicant had secured initial
technical approval, as the landowners had. This testimony constitutes some evidence indicating
that the State routinely granted exchanges when those seeking them had satisfied the necessary
technical requirements. Just as the cities in Teague and Garrett Bros., the State was obligated to
allow the development of the landowners' tract if they met those technical requirements. The
State cannot be permitted to avoid the result of those authorities simply by denying the landowners
the opportunity to go through the exchange process. 

 We hold, therefore, that the landowners stated a cause of action sufficient to
support the damages award for inverse condemnation.

Attorney's Fees Award

 There remains only the question of whether that portion of the judgment awarding
attorney's fees was proper. We are able to discern no basis for such an award. Although the
landowners expressly pleaded for the recovery of attorney's fees, they cited no statute authorizing
such an award. Under the "American Rule," attorney's fees may not be recovered unless
provided for by statute or contract between the parties. Dallas Cent. Appraisal Dist. v. Seven Inv.
Co., 35 Tex. Sup. Ct. J. 856, 858 (June 10, 1992); New Amsterdam Casualty Co. v. Texas Indus.,
Inc., 414 S.W.2d 914, 915 (Tex. 1967).

 We believe that the landowners could have sought attorney's fees pursuant to their
section 1983 and 1985 claims. Under 42 U.S.C.A. § 1988(b) (West Supp. 1992), a court is
authorized to award reasonable attorney's fees to a party prevailing in an action under sections
1983 and 1985. However, because we have ruled that the landowners were unable to assert a
claim against the State under either statute, section 1988 provides no basis for an attorney's fees
award in this case. We are aware of no other legal basis justifying an award of attorney's fees
on any of the landowners' other claims, and the landowners offer none.

 We, therefore, overrule the State's first and second points of error insofar as they
challenge the award of damages to the landowners, but sustain them as they bear on the award of
attorney's fees.



CONCLUSION


 For the foregoing reasons, we affirm the trial court's judgment awarding damages,
but we reverse that portion of the judgment awarding attorney's fees and render judgment that the
landowners are entitled to no attorney's fees.



 

 Bea Ann Smith, Justice

[Before Justices Powers, Aboussie and B. A. Smith]

Affirmed in Part; Reversed and Rendered in Part

Filed: February 3, 1993

[Publish]
1. [1] The Department has subsequently been renamed the Texas Department of Transportation. 
Tex. Rev. Civ. Stat. Ann. art. 6663(b) (West Supp. 1993).
2. [2] Besides the exchange, the conditions included, for example, permits for wastewater-
treatment hookups, water lines, and final subdivision approval. There seems to be no dispute
that Biggar would have been able to satisfy these remaining conditions.
3. [3] The State raised the defense of governmental immunity in an affirmative pleading. See
Davis v. City of San Antonio, 752 S.W.2d 518, 520 (Tex. 1988); Tex. R. Civ. P. 94.
4. [4] Article I, section 17 provides in pertinent part, "No person's property shall be taken,
damaged or destroyed for or applied to public use without adequate compensation being made,
unless by the consent of such person."