The STATE of Texas and the State Department of Highways and Public Transportation (Now Texas Department of Transportation), Petitioners,

v.

John H. BIGGAR, Terrance Kendall, David Helfert, and Edmund J. Fleming, Jr., Respondents.

No. D–3755.

Supreme Court of Texas.

Argued Nov. 2, 1993.

Decided March 30, 1994.

Rehearing Overruled April 28, 1994.

Dan Morales, Mark Heidenheimer, Austin, for petitioners.

Stephen I. Adler, Daniel M. Anderson, Austin, for respondents.

GAMMAGE, Justice, delivered the opinion of the Court, in which all Justices join.

In this inverse condemnation suit, the issue is whether the State must compensate a landowner for damages caused when the State, acting to reduce the price of a later eminent domain acquisition, denies the landowner's request for an easement exchange. We hold that, under the facts of the case before us, the State's actions resulted in damages compensable under Article I, section 17 of the Texas Constitution. For this reason, we affirm the judgment of the court of appeals. 848 S.W.2d 291.

John H. Biggar, Terrence Kendall, David Helfert, and Edmund J. Fleming, Jr. (collectively, "Landowners") own a tract of land abutting R.M. 2222 in the City of Austin, Texas ("the Biggar tract"). The State owns a channel easement on the Biggar tract which allows excess water from the roadway to drain across the land. Landowners, seeking to develop the land, obtained the City Council's initial approval of a site development plan ("SDP").[1] The SDP, however, would expire unless Landowners were successful in taking all necessary steps to begin construction prior to May 1987. The City Council later extended the deadline to May 1989.

Because the proposed construction would conflict with the channel easement owned by the State, Landowners requested an easement exchange from the State. Tex.Rev.Civ.

---

1. The State contends that Landowners obtained the City Council's approval based on a false belief that Landowners owned all necessary property rights. Although the easement did not appear on the SDP itself, which is a one-page cover application, Landowners presented evidence that the accompanying documents attached to and filed with the SDP adequately portrayed the existence and location of the easement.

Stat.Ann. art. 6673a authorizes the State to vacate an easement in return for the dedication of a comparable one, one which serves the same purpose and is just as effective as the original easement.[2] After some negotiation and several modifications requested by the State, in December of 1988 Charles Muery of the Texas Department of Highway and Transportation conveyed to Landowners the State's initial technical approval of the exchange.

During the same time period, the State began a project to widen R.M. 2222, making it necessary for the State to acquire a portion of the Biggar tract.[3] The County made Landowners an offer of what it believed to be just compensation. The Landowners, however, rejected the offer because it failed to take into account the increased value of the property attributable to the SDP and the effect the taking would have on the development plans.

Upon further examination, the county appraiser found that the Landowners were correct and the County would have to increase its offer substantially to account for the SDP. The appraiser communicated his opinion to the county attorney, also noting that the SDP would expire in five months time if Landowners were unsuccessful in obtaining all necessary approvals. The county attorney, in turn, relayed this information to Muery, who was involved in both the eminent domain transaction and the proposed easement exchange.

Then, on January 24, 1989, a little over one month after Muery had conveyed initial technical approval of the exchange, the State notified Landowners that the exchange was no longer in the State's best interest.[4] With the exchange denied and too little time remaining to alter the plans, the SDP expired[5] and the land's value decreased drastically. Only then, over five months after the initial offer, did the County take further action to condemn the land.

Landowners brought suit against the State of Texas, the Texas Department of Highways and Transportation, and Travis County alleging (1) inverse condemnation under Article I, section 17 of the Texas Constitution; (2) violations of the Fifth and Fourteenth Amendments to the United States Constitution; and (3) causes of action under 42 U.S.C.A. §§ 1983, 1985 (West 1981). Specifically, Landowners claimed that the State intentionally caused the expiration of the SDP and the resulting decrease in the value of the Biggar tract by denying their request for an easement exchange. Landowners further alleged that the State so acted in order to reduce the amount of "just compensation" required to be paid for the portion of the tract being taken through eminent domain. After settling with the County, the case proceeded to trial where the jury returned a verdict for Landowners in the amount of $1.5 million in damages and $150,000 in attorney's fees. The court of appeals affirmed the damage award, but reversed the award of attorney's fees.[6] 848 S.W.2d 291. We affirm the judgment of the court of appeals.

■ The State raises five points of error challenging the trial court's judgment. In all five points, the State contends no evidence

2. The evidence presented at trial showed that easement exchanges were routinely granted to allow development of land since the easements often run through the middle of tracts. In fact, several witnesses offered unrefuted testimony that no exchange had ever been denied once it was shown to meet the technical requirements.

3. There is some dispute as to who actually "acquired" the land. Because the project was to widen a ranch to market road, the County was to pay for the land acquired. However, the State ordered the County to acquire the land, supplied the County with the requisite acquisition documents and placed the property in its own name once acquired. Further, two county attorneys who worked on the acquisition testified that they were representing the State at the time. It is clear that when the County acted, it acted as the agent of the State.

4. Landowners presented evidence that Muery, in communication with Landowners' employee, stated that the exchange was denied because it was not in the interests of Travis County in their attempts to acquire the right-of-way for the State.

5. The City initially refused to extend the deadline and the SDP expired. The SDP was later revived but is now subject to ordinances which preclude the development envisioned by the original SDP.

6. Landowners do not appeal the denial of attorney's fees.

exists to support the jury's finding that a "taking" occurred. When reviewing a "no evidence" challenge, we must look only at that evidence which tends to support the judgment, viewing it in the light most favorable to the judgment and giving effect to all reasonable inferences. *McClure v. Allied Stores of Texas,* 608 S.W.2d 901, 904 (Tex. 1980). At the same time, we must disregard all contrary or conflicting evidence. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988).

The State does not argue there is no evidence it denied the easement exchange. Nor does the State argue there is no evidence that it did so in order to gain an advantage in the later condemnation of the Biggar tract. Instead, the State argues such evidence, even if true, does not support the finding that a "taking" occurred. Specifically, the State contends that, to prove a "taking" occurred, Landowners were required to show the loss of a constitutionally protected interest or vested property right. Because Landowners have no such right in an easement exchange, only an expectation, the State contends the denial of the exchange is "no evidence" of a "taking." *See e.g. Estate of Scott v. Victoria County,* 778 S.W.2d 585 (Tex.App.—Corpus Christi 1989, no writ); Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 362–363 (1960).

Landowners challenged the "taking" under both United States and Texas constitutional provisions. *See* U.S. CONST. amend. V.; TEX. CONST. art. I, sec. 17. We address only the protection afforded under the Texas provision. Article I, section 17 provides in pertinent part: "No person's property shall be *taken, damaged or destroyed* for public use without adequate compensation being made ..." TEX. CONST. art. I, sec. 17; *see City of Austin v. Teague,* 570 S.W.2d 389, 393 (Tex. 1978); *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731 (1941). It is well-settled in Texas that the "government's duty to compensate for damaging property for public use ... [is] not dependent upon the transfer of property rights." *Steele v. City of Houston,* 603 S.W.2d 786 (Tex.1980); *Gulf, C. & S.F.R.R. Co. v. Eddins,* 60 Tex. 656, 663 (1884). In-

stead, under certain circumstances, a Texas landowner may recover for damages caused to his property even if an actual "taking" of the property did not occur. *See e.g., Gainesville, H. & W.R. Co. v. Hall,* 78 Tex. 169, 14 S.W. 259 (1890); *see also Gulf C. & S.F.R. Co. v. Fuller,* 63 Tex. 467 (1885).

We recognize a cause of action for inverse condemnation where the government acts to gain an unfair advantage "against an economic interest of an owner." *Teague,* 570 S.W.2d at 393. In *Teague,* the City denied the landowner a permit to rechannel a tributary, thereby precluding all development of the land. *Teague,* 570 S.W.2d at 391, 394. We held that the City, acting under the guise of regulator, had improperly acquired a scenic easement over the land without compensating the landowner. *Teague,* 570 S.W.2d at 394.

In *Teague,* we relied on the policy espoused in *San Antonio River Auth. v. Garrett Bros.,* 528 S.W.2d 266 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.), a case with facts more similar to those at hand. As here, the question presented in *Garrett Bros.* was "whether prohibitions on use of property which have as their purpose the prevention of private development that would increase the cost of planned future acquisition of such property by the government is the type of case in which payment of compensation is required." *Garrett Bros.,* 528 S.W.2d at 273. The government, in that case, halted development of a subdivision because it would cause an increase in the cost of acquiring the land for a future damsite. *Garrett Bros.,* 528 S.W.2d at 270. The court of appeals, by recognizing the cause of action, sought to discourage government from wielding its power to "rig" the market in its favor. *Garrett Bros.,* 528 S.W.2d at 274.

When condemning land, the government is in a better position than the average purchaser because it is able to compel the sale. To balance the transaction and to ensure the landowner is not burdened with the cost of community benefits, our constitution requires that the landowner receive "just compensation" for his property. *Teague,* 570 S.W.2d at 393–94, *citing Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4

L.Ed.2d 1554 (1960). If government is able to use its power as sovereign to adjust the value of "just compensation," the constitutional protection is rendered meaningless. *See* TEX. CONST. art. I, § 17. In such a world, government "can no longer pretend to be acting as a neutral arbiter ... Instead, it has placed a heavy governmental thumb on the scales to insure that in the forthcoming dispute between it and one, or more, of its citizens, the scales will tip in its own favor." *Garrett Bros.*, 528 S.W.2d at 274.

■ The State contends that, because Landowners complain of the denial of an easement exchange rather than the enactment of a regulation or the refusal of a permit, our decision in *Teague* is not dispositive. The State argues that, unlike in *Teague*, the consideration of an easement exchange is not a regulatory function of the government and, therefore, it need not show a rational reason for the denial. The State does have discretion to deny the exchange of easements. TEX.REV.CIV.STAT.ANN. art. 6673a. But even an otherwise lawful act, such as the discretionary denial of an easement exchange, can become compensable if done in contravention of our state constitution. *See Teague*, 570 S.W.2d at 391–394; *Garrett Bros.*, 528 S.W.2d at 273.

The unrefuted evidence was that this discretion, in the past, was used without fail to facilitate the development of land. Landowners presented evidence that exchanges were so routinely granted that they posed no real obstacle to development plans. Moreover, no witness knew of any other easement that was denied after meeting the technical requirements. In this case, however, the discretion was used to preclude development in order to reduce the value of the tract. The evidence presented, by either side, showed *no other reason* for the denial.[7]

We do not, by this decision, contradict in any way our holding in *Schmidt v. Austex*, 867 S.W.2d 769 (Tex.1993). In *Schmidt*, we held that a landowner, part of whose property is taken by power of eminent domain for purposes of a new highway, may not also recover for the diminution in value of the remainder caused by the inconvenience of the new construction. But when the State takes action specifically designed to decrease the value required to acquire part of the landowner's property by power of eminent domain and simultaneously damages the entire tract's value, we hold the landowner may recover.

Finally, the State contends that because the easement had not been declared "surplus," TEX.REV.CIV.STAT. art. 6673a does not authorize the exchange. The easement, in fact, was and will continue to be used for drainage, the purpose for which it was acquired. Muery, who handled the easement exchange issue for the State, testified at trial, however, that an easement need *not* be surplus for an exchange to be considered. Instead, once it is shown that a comparable easement meeting all technical requirements is available, the exchange is granted and the new easement is put to use, necessarily making the original one surplus. The State's argument is, consequently, without merit.

Here, Landowners presented evidence the State denied the easement exchange to reduce the cost to the public of acquiring a portion of the Landowners' land. In the same stroke, the State managed to foreclose all opportunity to develop, causing the concomitant reduction in value of not only the portion taken, but the entire Biggar tract. We hold the State's actions resulted in compensable damages under Article I, section 17 of the Texas Constitution.

We affirm the judgment of the court of appeals. The State brought forward no point of error complaining of the damages awarded and has waived all complaints in this regard. Tex.R.App.P. 130(c); *Wich v. Fleming*, 652 S.W.2d 353, 356 (Tex.1983); *see also Donwerth v. Preston II Chrysler–Dodge*, 775 S.W.2d 634, 643 (Tex.1989) (Ray, J., concurring). We express no opinion whether the

---

7. The State did argue that the exchange was denied because the County Commissioner's Court would not approve it. However, the issue was never brought before the Commissioner's Court and the County never communicated any disapproval to the State. Moreover, there was evidence that the land was in the City and would, therefore, not require approval of the County Commissioner's Court.

courts below applied the proper measure of damages, or whether the evidence supported the damages.