**GOLDEN HARVEST COMPANY, INC., N.H.T. Partnership, and Kaufman County Levee Improvement District No. 15, Appellants,**

v.

**CITY OF DALLAS, Texas, Appellee.**

No. 12–95–00306–CV.

Court of Appeals of Texas, Tyler.

Feb. 27, 1997.

Paul E. Galvin, Dallas, for Appellants.

Denise A. Baldwin, Dallas, for Appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

This is an appeal by Golden Harvest Company, Inc., N.H.T. Partnership, and Kaufman County Levee Improvement District No. 15 (hereafter known collectively as "Golden Harvest") from the granting of summary judgment for the City of Dallas ("the City"). In six points of error, Golden Harvest contends that the trial court erred in granting the City's Motion for Summary Judgment. **We reverse and remand.**

The City owns and operates the Lake Ray Hubbard Dam ("the Dam"). The lake's primary purpose is to furnish water for the City, as well as to sell water to surrounding cities. A secondary purpose of the lake is recreation, for which the City receives fees. The Dam is downstream from Lake Lavon, an Army Corps of Engineers flood control dam and lake.

In May of 1989, May of 1990, and April of 1991, due to heavy rains, the City released more water from Lake Ray Hubbard than normal, admittedly flooding Golden Harvest's property, causing extensive damage.

Golden Harvest is located downstream from the Dam. Because of its location in a flood plain, Golden Harvest constructed levees in anticipation of normal flooding. As a result of the damages it incurred due to the abnormal release of water during 1989, 1990,

and 1991, Golden Harvest filed suit against the City. Golden Harvest alleged, in the alternative, negligence, an intentional taking under Article I, Section 17 of the TEXAS CONSTITUTION, and common-law nuisance, claiming approximately $3 million in consequential damages.

Subsequently, the City filed a motion for summary judgment, claiming sovereign immunity as to all of Golden Harvest's causes of action grounded in negligence. The City also sought summary judgment on the taking and nuisance allegations, urging the court to adopt its contention that they were negligence claims, as well, and thus barred by sovereign immunity. On May 3, 1995, Golden Harvest responded with affidavits and deposition excerpts. Subsequently, the City filed a brief in which it cited new authority in support of its Motion for Summary Judgment. After the City's brief was filed and prior to a May 10, 1995 hearing, Golden Harvest filed a motion for leave to file a supplemental response in opposition to the City's Motion for Summary Judgment. The trial court refused to sign an order granting leave to file the supplemental response. On November 1, 1995, the court signed an order granting summary judgment in the City's favor, and ordered that Golden Harvest recover nothing. We will address additional relevant facts in our discussion under the various points of error.

In reviewing this summary judgment, we must determine whether the City met its burden to establish that no genuine issue of material fact exists. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex. 1979). The City bears the burden of proving its entitlement to the summary judgment as a matter of law. *See Nixon,* 690 S.W.2d at 548; *Roskey v. Texas Health Facilities Commission,* 639 S.W.2d 302, 303 (Tex.1982) *(per curiam).* Only issues or grounds raised in the motion by the City are to be considered by the trial court and this Court. TEX.R. CIV. P. 166a(c); *McConnell v. Southside Independent School District,* 858 S.W.2d 337, 341 (Tex.1993). The court must view the evidence in the light most favorable to the

non-movant. *See Great Am. Reserve v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). The court must accept as true all evidence favorable to the non-movant. *See Nixon,* 690 S.W.2d at 549; *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Moreover, the court must indulge every reasonable inference in the non-movant's favor and resolve all doubts as to the existence of a genuine issue of material fact in its favor. *See Id.* The court can consider evidence which favors the movant only if it is uncontroverted. *See Great Am. Reserve,* 391 S.W.2d at 47.

A defendant who moves for summary judgment must disprove as a matter of law one or more of the elements essential to the plaintiff's cause of action. *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991) *(per curiam).* A summary judgment for the defendant which disposes of the entire case, is proper only if, as a matter of law, the plaintiff could not succeed upon any theory pleaded. *Interstate Fire Ins. Co. v. First Tape, Inc.,* 817 S.W.2d 142, 144 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

In their first point of error, Golden Harvest alleges that the acts or omissions complained of occurred in the years 1989 through 1991, and that the City was not entitled to exclusion from liability under the Tort Claims Act ("the Act"). The City, in answer and as a ground for its Motion for Summary Judgment, contended that there was no waiver of sovereign immunity in its operation of the Dam, since the Dam was constructed and its operating procedures were adopted prior to January 1, 1970. TEX. CIV. PRAC. & REM. CODE. ANN. § 101.061 provides that the Act does not apply to a "claim based on an act or omission that occurred before January 1, 1970."

In its response and on appeal, Golden Harvest argues that the City was negligent in the deliberate manner in which it mismanaged the operation of the Dam during the years in question. The summary judgment evidence reflects that the City's operating guidelines ("guidelines") as set forth in Design Memorandum No. 2 (adopted prior to 1970), provided, in part, that the City intended the managers of the Dam to follow three

general guidelines in the Dam's operations. First, the managers should regulate the reservoir storage so that the Dam and spillway were not subjected to a more critical loading condition than that for which they were designed; second, the operation of the project must not subject downstream areas to greater floods than would have occurred without the project; and third, if it is feasible, the managers should regulate the reservoir to minimize downstream flood damages. The guidelines provided for specific amounts of water to be released on two objective factors: (1) the level of the lake's elevation; and (2) the quantity of water flowing into the lake. Golden Harvest contends that the operating procedures (carrying out the above guidelines) did not incorporate any evaluation of factors, such as the weather or the consequences of large releases on downstream property owners. Golden Harvest further avers that the City's policy of keeping the Dam at an elevation of 435.5 feet, the maximum quantity of water it is legally allowed to store, and maintaining this storage during the entire rainy/wet season (including April and May), did not take into consideration the probability of major storms. In other words, the City did not pre-release water in anticipation of a major storm in order to have a more steady flow of water, thereby reducing downstream flooding.

As we understand Golden Harvest's argument under this point, the City adopted new operating guidelines in 1986, but reverted to the old (pre–1970) guidelines less than one year later. Therefore, reverting to the pre–1970 guidelines *after* the Tort Claims Act went into effect, was an act or omission which would come under the aegis of the Act. Thus, the City is not shielded by consequence that "the act or omission" occurred prior to January 1, 1970.

In its second point of error, Golden Harvest contends that the failure of the City to pre-release water from the Dam, in anticipation of a storm, was negligent implementation of an existing policy, rather than a discretionary procedure for which the Act does not waive sovereign immunity. Golden Harvest argues that it raised a genuine issue of material fact regarding whether or not the act of prereleasing water was discretionary when it offered the affidavit and deposition testimony of Kenneth DelRegno. In his affidavit, DelRegno explained that he had discretion as to the amount of water to release, and that he exercised that discretion on the particular dates in question. However, this affidavit directly controverted DelRegno's deposition testimony in which he stated he had no authority to release more than a certain amount of water from the Dam. In addition, he testified that in order to release the water during the times in question, he needed authority from the Deputy Director of Water Operations or a more senior level position. Also, Dennis Cave, the Deputy Director of Waste Water Operations for the Dallas Water Utilities and Roger Proza, the Assistant Director of Operations for the Dallas Water Utilities, testified that they made the particular release decisions complained of. Therefore, according to Golden Harvest, the City did not prove as a matter of law that the release of water was discretionary, and summary judgment based upon this ground was improper.

The City, in response to Golden Harvest's arguments, asserts that the decision to pre-release water in anticipation of major storms was a discretionary function on the part of the City, and that whether a governmental act is discretionary and an exception of waiver under the Act, is a question of law for the court. It further contends that, pursuant to Section 101.061 of the Act, sovereign immunity shields the City from liability for acts of negligence while engaged in governmental functions prior to January 1, 1970. The City asserts that the design, construction and the adoption of the guidelines for the operation of Lake Ray Hubbard occurred prior to January 1, 1970. Thus, the City is immune from Golden Harvest's claim for negligent design, construction and operation.

■ We agree that the City's decisions concerning the timing, the quantity, and under what conditions water should be released is a discretionary function immunizing the City from liability under the Tort Claims Act for the reasons hereafter set forth. Prior to adoption of the Texas Tort Claims Act, the State and its political subdivisions had full

immunity from tort liability. *Wyse v. Department of Public Safety,* 733 S.W.2d 224 (Tex.App.—Waco 1986, writ ref'd n.r.e.). The Legislature did not abolish governmental immunity in passing the Act; however, it did waive sovereign immunity in some limited areas, as follows:

> A governmental unit in this state is liable for:
>
> (1) Property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:
>
> > (a) The property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (b) The employee would be personally liable to the claimant according to Texas law; and
>
> (2) Personal injury and death so caused by a condition or use of tangible, personal, or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(Vernon 1986).

■ Thus, if a given plaintiff maintains a cause of action against a governmental body included within the terms of the Act, said plaintiff must plead and prove that the cause of action is within the purview of the Act; otherwise, it is void as a matter of law by the doctrine of sovereign immunity. The Act does not waive immunity for claims arising from discretionary acts and omissions. *Bellnoa v. City of Austin,* 894 S.W.2d 821 (Tex.App.—Austin 1995, no writ). The immunity implied in Section 101.056 of the Act precludes liability for claims based upon the failure of a governmental unit or its employees to perform an act that is not required by law, as follows:

> This chapter does not apply to a claim based on:
>
> (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
>
> (2) a governmental unit's decision not to perform an act or its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 1986).

■ This discretionary function exception to the waiver of governmental immunity is designed to avoid judicial review of governmental policy decisions. *State v. Terrell,* 588 S.W.2d 784, 787 (Tex.1979). A governmental unit is immune from liability if damage or injury results from the formulation of policy. *Id.* Whether a government act is discretionary and within the exception to the waiver of immunity under the Act is a question of law. *Bellnoa,* 894 S.W.2d at 824. When distilled to its essential allegation, Golden Harvest's claim is that the City was negligent in its failure to pre-release water in anticipation of major storms, resulting in damage to the property located downstream from the Dam. We are inclined to follow the reasoning in *Bennett v. Tarrant County Water Control and Improvement Dist. No. 1,* 894 S.W.2d 441 (Tex.App.—Fort Worth 1995, writ denied) in which the court held that a governmental unit's failure to pre-release water in anticipation of major storms is a discretionary act which does not subject a governmental unit to liability. The plaintiffs in the *Bennett* case claimed that the defendant water district was under an obligation, in light of the prospects for heavy rain, to pre-release water from the reservoir. *Bennett,* 894 S.W.2d at 451. In addition, as in our present case, the defendant water district did not engage in the prerelease of water from the lake in anticipation of above-average inflows. *Id.* at 454. In *Bennett,* the court determined that since the floodgate and water release operations were governed by the policies and procedures adopted by the water district's board of directors (and these policies did not require pre-release of water from the lake in anticipation of above-average inflows), the decision to release or pre-release water from the lake constituted policy formulation for which the water district was immune from liability. In determining that such acts were discretionary functions, the court stated as follows:

We hold that the decision whether to release or pre-release water from the Eagle Mountain Lake spillway constitutes policy formulation for which the Water District is immune from liability.... We hold the Water District's decision to impound excess water was a policy decision that constitutes an exception to the waiver of immunity under the TTCA. Therefore, the Landowners are precluded from recovery under the TTCA, even if the decision to impound water was negligent.

*Id.* In the present case, the uncontroverted summary judgment evidence showed that it was the City's policy not to pre-release water from the Lake Ray Hubbard Dam, but to keep the lake at maximum elevation level so that a ready supply of water would be available for use by the residents of the City and for sale to other customers. The managers of the Dam made decisions concerning the impoundment and release of waters and, in so doing, carried out a discretionary function. The contradiction between DelRegno's affidavit and his deposition testimony is immaterial since he did have the authority to release the amount of water which caused Golden Harvest's damage. Thus, we do not find it necessary to determine if the operating guidelines were adopted prior to January 1, 1970, or whether the City has immunity for negligent design, construction and operation pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 101.061 (Vernon 1986). We hold that the summary judgment evidence established immunity under Section 101.056, regardless of how or when the guidelines were formulated or implemented. Points of error one and two are overruled.

In its third and fourth points of error, Golden Harvest addresses the propriety of the court granting a summary judgment when the pleadings and evidence raised genuine issues of material fact regarding its nuisance claim and a taking under Article I, Section 17 of the TEXAS CONSTITUTION.

In its Fourth Amended Original Petition, Golden Harvest alleged that the City intentionally performed acts, as set forth above, resulting in the taking of its property for public use. Additionally, and alternatively, it alleged that the City's "non-negligent perfor-

mance of its governmental functions" caused "a substantial interference with the use and enjoyment of Plaintiffs' land." The City's Motion for Summary Judgment maintained that Golden Harvest's "taking" cause of action was based on negligent conduct of the City and urged the court to construe Golden Harvest's nuisance claim as a claim of negligence and, therefore, barred by sovereign immunity.

██ A constitutional taking occurs whenever property is intentionally taken, damaged or destroyed. Our Supreme Court has stated that although these three terms are often treated as synonymous, "the terms are different and have different origins." *Steele v. City of Houston,* 603 S.W.2d 786, 789 (Tex.1980). With respect to the "damaging" of property in particular, as opposed to the technical "taking" of property, the court stated that the "the government's duty to compensate for damaging property for public use after 1876 was not dependent upon the transfer of property rights." *Id.* at 790. The court supported this conclusion by citing *G., C. & Santa Fe R.R. Co. v. Eddins,* 60 Tex. 656, 663 (1884): ·

> To entitle a party to compensation under our present constitution, it is not necessary that his property shall be destroyed, nor is it necessary that it shall even be taken. It is sufficient to entitle him to compensation that his property has been damaged. *The fact of being damaged entitles him to the protection extended by this constitutional provision, as fully as if his property had been actually taken or destroyed.*
>
> (Emphasis added)

*Steele,* 603 S.W.2d at 790. A party must bring suit on a constitutional taking cause of action pursuant to Article I, Section 17 of the TEXAS CONSTITUTION, which provides that "[n]o person's property shall be *taken, damaged or destroyed or applied to public use without adequate compensation* being made...." TEX. CONST., art. I, § 17 (emphasis added). Cities are not immune from actions brought under this section. *State v. Biggar,* 848 S.W.2d 291, 294 (Tex.App.—Austin 1993), *aff'd.,* 873 S.W.2d 11 (Tex.1994); *Bragg v. City of Dallas,* 605 S.W.2d 669, 671 (Tex.Civ.App.—Dallas 1980) (motion over-

ruled by 608 S.W.2d 696 (Tex.Civ.App.—Dallas 1980)).

■ To discount a claim of taking by a property owner, a city must *disprove* at least one of the following elements: (1) that the governmental unit intentionally performed certain acts, (2) that the acts resulted in a taking or damaging of the property, and (3) that the taking was for public use. *City of Abilene v. Smithwick,* 721 S.W.2d 949, 951 (Tex.App.—Eastland 1986, writ ref'd n.r.e.). In the *City of Houston v. Derby,* 215 S.W.2d 690 (Tex.Civ.App.—Galveston 1948, writ ref'd), the court, in effect, stated that the protection afforded citizens by the Constitution against the exercise of condemnation is liberally construed and the power to condemn must be strictly construed against governmental units. The Tort Claims Act, in TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215 (Vernon 1994), sets forth what governmental functions may be exercised by a municipality in the interest of the general public, or for the public use. Waterworks, dams and reservoirs, and water and sewer service are included in this list. Courts have found "public use" when private land was used for the diversion of surface waters,[1] when plaintiffs' property was flooded as a result of a drainage project,[2] and when the overflow water from a dam used for water supply caused damage to land.[3]

■ We must next examine applicable Texas law regarding the elements of nuisance necessary to support a claim for damages. To constitute a nuisance, thereby creating potential liability for a governmental agency, the condition must substantially interfere with a person's use and enjoyment of land by causing unreasonable discomfort or annoyance to the user's ordinary sensibilities. *Shade v. City of Dallas,* 819 S.W.2d 578, 582–83 (Tex.App.—Dallas 1991, no writ). Generally, actionable nuisance will not arise unless the facts fall within one of the following three classifications: (1) intentional invasion of another's interests, (2) negligent invasion of another's interests; or (3) other conduct, cul-

pable because abnormal or out-of-place in its surroundings, that invades another's interests. *Id.* Since an intentional invasion supports an action for nuisance, proof of negligence by a plaintiff is not necessary. *Id.* For an act of a government entity to qualify as a nuisance without being defeated by the doctrine of governmental immunity, the condition created by the entity must in some way constitute an unlawful invasion of property or the rights of others beyond that arising merely from its negligent or improper use. *Shade,* 819 S.W.2d at 581–82 (reversing summary judgment for the city on the plaintiffs' "taking" cause of action because the city failed to prove that its act was negligent, and therefore shielded by sovereign immunity). Nonnegligent, or intentional nuisance is actionable, and the City is not immune under the Texas Torts Claim Act. *See Bible Baptist Church v. City of Cleburne,* 848 S.W.2d 826 (Tex.App.—Waco 1993, writ denied).

Texas courts have often permitted plaintiffs who suffer *flood* damage to proceed to trial in non-negligence nuisance claims against municipalities. *Abbott v. City of Kaufman,* 717 S.W.2d 927 (Tex.App.—Tyler 1986, writ dism'd w.o.j.) (reversing summary judgment for the city where plaintiffs alleged a taking when the city continuously discharged water from the city's sewage treatment plant, causing flooding); *City of Uvalde v. Crow,* 713 S.W.2d 154 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.) (finding nuisance where the plaintiff's land was flooded with water from the city's sewage plant, rejecting the city's argument that the nuisance claim was actually a claim of negligence).

■ We conclude that Golden Harvest's summary judgment evidence, when viewed in its favor, raises genuine issues of material fact as to the flooding, and as to whether the City intentionally caused the flooding by failing to pre-release water, thereby taking, damaging or destroying Golden Harvest's property. And we believe that evidence that the release of water was

---

**1.** *Soule v. Galveston County,* 246 S.W.2d 491 (Tex.Civ.App.—Galveston 1951, writ ref'd).

**2.** *City of Perryton v. Huston,* 454 S.W.2d 435 (Tex.Civ.App.—Eastland 1970, writ ref'd).

**3.** *City of Waco v. Rook,* 55 S.W.2d 649 (Tex.Civ. App.—Waco 1932, writ dism'd).

necessary to protect the Dam on the occasions in question raised a fact issue as to "public use," as required for a "taking" by TEX. CONST. art. I, § 17. We further conclude that a trier of fact could find that a non-negligent nuisance caused the damages in question under Golden Harvest's pleading and summary judgment evidence. The City, in its motion, argued that Plaintiffs had alleged a nuisance claim based on negligence. Our reading of Golden Harvest's Fourth Amended Original Petition indicates that its taking and/or nuisance claim was based on non-negligent acts committed by the City. Thus, Golden Harvest can state its claim of nuisance and interrelate it with a taking under Art. I, sec. 17 of the TEXAS CONSTITUTION. *City of Abilene v. Downs*, 367 S.W.2d 153, 159 (Tex.1963). Once a litigant has alleged such a nuisance, the Texas Supreme Court recognizes an exception to the doctrine of governmental immunity. *Bible Baptist Church*, 848 S.W.2d at 830 (citing *Steele*, 603 S.W.2d at 791). Therefore, because we cannot conclude that the City established a non-taking or non-existence of nuisance as a matter of law, we sustain Golden Harvest's points of error three and four.

■ In its fifth point of error, Golden Harvest claims that it raised a fact issue as to whether the City's negligent operation of the floodgates of the Dam involved the operation of motor-driven equipment, as that term is defined in Section 101.021 of the Tort Claims Act. Golden Harvest alleged and had proper summary judgment evidence that its property claim arose out of the operation of the use of motor-driven equipment, due to the fact that the gates used to control the release of water were operated by the use of electric motors. Golden Harvest argues that the Legislature provided a waiver of governmental immunity when it stated that a governmental entity would be liable for:

(1) property damage ... proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:

(a) the property damage ... arises from the operation or use of a motor-driven vehicle or *motor-driven equipment;* and

(b) the employee would be personally liable to the claimant according to Texas law....

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(Vernon 1994). But the City argues that Section 101.001(3)(A) of the Act provides that "motor-driven equipment" does not include "equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state." In response, Golden Harvest asserts that since the City is not a "river authority," this limitation does not protect it from liability. However, the Fort Worth Court of Appeals has held against Golden Harvest's position in *Bennett v. Tarrant Co. Water Control & Improvement Dist. No. 1*, 894 S.W.2d 441, 451 (Tex. App.—Fort Worth 1995, writ denied). We agree with *Bennett*, in which the court concluded that the water control improvement district was not liable, as the Act's waiver of immunity did not apply. The court stated:

... the term "motor-driven equipment" as defined in the TTCA does not apply to equipment used in connection with the operation of floodgates or water release equipment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(A) (Vernon 1986). Accordingly, the Water District is immune from liability for these particular negligence claims.

*Id.* We note that, just as a "water control improvement district" is not a "river authority," neither is the City's Dam.

In *Schaefer v. City of San Antonio*, 838 S.W.2d 688, 691 (Tex.App.—San Antonio 1992, no writ), the San Antonio Court of Appeals further defined what constitutes "motor-driven equipment" under Section 101.021(1). The court determined that damage caused by water propelled by electric motor-driven equipment through a water main arose from the "practical application of principles or processes of directing and controlling" water distribution and pressure, rather than from principles or processes of operating or using motor-driven equipment. Accordingly, the court concluded that controlling water pressure by use of electric motor-driven equipment did not constitute a cause of action under the Act. *Schaefer*, 838

S.W.2d at 693. Thus, while engaged in the governmental function, the City has sovereign immunity for any negligent acts, except to the extent that the Act waives that immunity. *Shade,* 819 S.W.2d at 582. Section 101.0215(a)(19) of the Act expressly lists "dams and reservoirs" as a governmental function for which the City enjoys immunity. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(19). Since Golden Harvest's claims are for property damage only, it is critical that the alleged property damage arise from the City's use or operation of a motor vehicle or motor-driven equipment. We agree with the Fort Worth and San Antonio courts of appeal, as stated above, that Golden Harvest's negligence claims are barred as a matter of law by the doctrine of governmental immunity. Golden Harvest's fifth point of error is overruled.

■ In its sixth point of error, Golden Harvest claims that the court erred in not allowing it to supplement its response in opposition to the City's Motion for Summary Judgment after the City allegedly raised issues in its brief that it did not raise in its motion. The chronology of events is as follows: on March 31, 1995, the City filed a motion for summary judgment in which it sought judgment on all of Golden Harvest's claims. In its motion, the City argued that it had sovereign immunity against Golden Harvest's claim of negligence, and that the property owners' other claims should be construed as negligence claims so as to bar them by sovereign immunity, as well. In response, on May 3, 1995, Golden Harvest timely filed its response to the City's Motion for Summary Judgment with supporting affidavit and deposition excerpts. Thereafter, on May 8, 1995, the City filed a brief in support of its Motion for Summary Judgment. In its brief, the City allegedly cited new authority and raised new grounds in support of its position. Subsequent to this filing, at a May 10th hearing, Golden Harvest filed their Motion for Leave to File a Supplemental Response in Opposition to the City's Motion for Summary Judgment. The trial court failed to grant leave. On November 1, 1995, the trial court granted summary judgment in the City's favor, and ordered that Golden Harvest recover nothing. Golden Harvest contends that, to the extent the trial court considered the grounds raised in the City's brief that were not raised in its motion, the court committed reversible error pursuant to the standards set forth in *McConnell v. Southside Independent School Dist.,* 858 S.W.2d 337 (Tex.1993). In addition, Golden Harvest claims it was an abuse of discretion for the trial court to consider the City's brief, if it did so, and not allow Golden Harvest the opportunity to file a supplemental response to the new issues allegedly raised by the City in its brief.

The City contends that it did, in fact, assert all grounds upon which it was basing its Motion for Summary Judgment in both its motion and its brief. Our review of the City's Motion for Summary Judgment shows that the City did, in fact, specify all the grounds upon which it based its motion. Specifically, the City alleged that (1) the negligence claims of the Golden Harvest were barred by the Texas Tort Claims Act under Section 101.056; (2) the property damage claims did not involve the use or operation of motor-driven equipment; and (3) the elements of a "taking" and a "nuisance" claim were not present. The City asserts that these grounds were sufficient to give Golden Harvest "fair notice" of its grounds for moving for a summary judgment.

■ The purpose of the summary judgment procedure is to permit the trial court to dispose promptly of cases that involve unmeritorious claims or untenable defenses. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex. 1979). The motion for summary judgment must state *specific grounds* on which it is made. *McConnell,* 858 S.W.2d at 341. The grounds in the motion are sufficiently specific if the motion gives "fair notice" to the nonmovant. *Thomas v. Cisneros,* 596 S.W.2d 313, 316 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). In *McConnell, supra,* the movant's summary judgment motion (which was fully set forth in a footnote) stated only "that there were no genuine issues as to any material facts." *McConnell,* 858 S.W.2d at 338 n. 1. Thereafter, the movant filed a twelve-page brief in support of the motion which

expressly presented the grounds establishing its entitlement to summary judgment. *Id.* at 339. The court determined that the motion did not meet the requirements of Rule 166a of the Texas Rules of Civil Procedure because the specific grounds for summary judgment were not expressly presented in the motion itself. *Id.* In making its determination, the court stated, "[c]onsistent with Rule 166a, we use the term "grounds" to refer to the reasons entitling the movant to summary judgment. Likewise, we use the term "issues" to refer to the reasons the non-movant contends defeat the movant's entitlement to summary judgment. *Id.* Our examination of the City's Motion for Summary Judgment showed that the City specified all of the grounds upon which it based its motion and sufficiently asserted all the grounds or, stated differently, "reasons" sufficient to give Golden Harvest "fair notice." There is no requirement under Rule 166a that the City cite all of its authority in its Motion for Summary Judgment. From our examination of Golden Harvest's supplemental response, we concluded that it contained no additional argument concerning the same "grounds" as set forth in the City's motion. We believe the trial court did not abuse its discretion when it considered the City's brief in its entirety in deciding the motion for summary judgment.

Next we consider Golden Harvest's contention that the trial court abused its discretion in failing to allow Golden Harvest to file a motion for leave to file a supplemental response. If a nonmovant attempts to file a late response to a summary judgment motion, non-movant must get permission from the court in writing, or it will not be before the court. *INA v. Bryant,* 686 S.W.2d 614, 615 (Tex.1985); *Lazaro v. University of Tex. Health Science Ctr.,* 830 S.W.2d 330, 331–32 (Tex.App.—Houston [14th Dist.] 1992, writ denied). If a non-movant files a late response, and the record does not contain some indication that the trial court granted leave to file it, the non-movant waives those issues on appeal. *Goswami v. Metropolitan Savings & Loan Ass'n,* 751 S.W.2d 487, 490 (Tex.1988). In the present case, Golden Harvest did not file a motion for continuance or otherwise re-

quest more time to respond to the City's Motion for Summary Judgment. Nor did Golden Harvest file a motion to reconsider or otherwise reassert its request to supplement prior to November 1, 1995, the date the trial court granted the City's Motion for Summary Judgment. In light of the fact that Golden Harvest did not file the motions noted herein, the trial court did not abuse its discretion in failing to sign the order on Golden Harvest's motion for leave. Golden Harvest's sixth point of error is therefore overruled.

Having concluded that the trial court erred in granting a motion for summary judgment for the City as contained in points of error number three and four, the matter is **reversed and remanded** to the trial court on the issues of constitutional taking and nuisance, as set forth herein.