Opinion to: SJR AH TGT SN TJ EVK ERA GCH LCH





















In The
Court of Appeals
For The
First District of Texas








NO. 01-02-00158-CV









EDWARD A. KERR AND NORMA KERR , et al, Appellants

V.

HARRIS COUNTY; HARRIS COUNTY FLOOD CONTROL DISTRICT;
HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NUMBER 168, HARRIS
COUNTY MUNICIPAL DISTRICT NUMBER 170, AND JONES & CARTER,
INC., Appellees








On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 99-45553









O P I N I O N

          This is an inverse condemnation case brought pursuant to Article I, section 17
of the Texas Constitution.


 Plaintiffs, Edward A. and Norma Kerr, along with
approximately 360 other plaintiffs (“plaintiffs”), sued Harris County Flood Control
District, Harris County, (collectively, “the Harris County entities”), two municipal
utility districts (“the MUDs”), and an engineering company, contending that their
activities within the White Oak Bayou watershed since 1984 caused flooding of the
watershed during Tropical Storm Frances, resulting in damage to the plaintiffs’ homes
and properties. The trial court granted summary judgment in favor of the Harris
County entities, the MUDs, and the engineering company, and this appeal followed.
BACKGROUND
          Plaintiffs own homes in several subdivisions located in the White Oak Bayou
watershed. The subdivisions were built in the 70's and early 80's. On September 11,
1998, plaintiffs homes flooded when Tropical Storm Frances dropped over nine inches
of rain in the watershed. Plaintiffs contend the Harris County entities’ flood control
measures during the years before the storm actually caused their homes to flood.
          In November 1980, Harris County Commissioners Court authorized Harris
County Flood Control District (“the District”) to implement an interim storm water
management policy. In 1984, Harris County adopted a plan entitled “White Oak
Bayou Regional Flood Control Project,” which had been prepared by Pate Engineers
(hereinafter, “the Pate plan”). The purpose of the plan was to control the 100-year
flood by constructing flood control improvements in the White Oak Bayou area. The
Pate plan took into account that new development in the area would increase runoff
into the Bayou, and was divided into several phases. In Phase I, channel
improvements were made at the mouth of the White Oak Bayou, which is downstream
from plaintiffs. In Phase II, channel improvements were made from Cole Creek,
upstream to North Houston-Rosslyn. Again, the Phase II channel improvements were
downstream from plaintiffs. Phase III called for the construction of an earthen
channel from North Houston-Rosslyn to Gessner, an area adjacent to plaintiffs
properties. Phase IV called for construction in and around Jersey Village. Phases I
and II of the Pate plan were completed, but Phases III and IV were not.
          In May 1989 and June 1989, flooding in the improved lower half of White Oak
Bayou caused the District to question the effectiveness of the Pate Plan, specifically
whether the downstream channel had the capacity it was believed to have. 
Consequently, in 1991, the District hired Klotz Associates, Inc. to design an alternate
Phase I to address the concerns raised by the 1989 floods in the lower portion of the 
Bayou.
          Klotz prepared an engineering report, recommending that the District widen the
channel from Cole Creek to just upstream of North Houston-Rosslyn and to place a
transition control structure in the bayou at the upstream end of the widened channel. 
The purpose of the structure was to control the transition from the improved lower
portion of the bayou from the unimproved upper portion of the bayou, without which
erosion of the channel and downstream flooding would have occurred. The Klotz
report did not indicate that flooding along any portion of the bayou would be
increased by the transition control structure. The Harris County entities stated that,
had the Klotz report indicated that the structure would aggravate the flooding potential
along the bayou, it would not have been approved. 
          Plaintiffs’ homes, which were located upstream of the transition control
structure, flooded in the wake of Tropical Storm Frances, which deluged the area in
September 1998. The plaintiffs filed suit, asserting both inverse condemnation claims
under Article I, section 17 of the Texas Constitution and nuisance claims. The Harris
County entities moved for summary judgment, contending that (1) they were entitled
to governmental immunity because the plaintiffs had failed, as a matter of law, to
show either an inverse condemnation or nuisance and (2) they could not be held liable
because Tropical Storm Frances was an act of God. The MUDs moved for summary
judgment, contenting that (1) they were entitled to governmental immunity because
the plaintiffs failed to show that they committed an intentional act causing damage,
and (2) the flooding was caused by an act of God. The engineering company moved
for summary judgment, contending that it had proved its statute of repose affirmative
defense as a matter of law. The trial court granted the summary judgments, and this
appeal followed.



STANDARDS OF REVIEW
          We follow the usual standards of review for an order granting summary
judgment under rule 166a(a), (b), or (i). See Tex. R. Civ. P. 166a(a), (b), (i); Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001) (summary judgment order not
specifying grounds); Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.
1997) (standard of review and burden under rule 166a(a), (b)); Flameout Design &
Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.—Houston [1st Dist.] 1999, no pet.) (standard of review and burden under rule
166a(i)). Traditional summary judgment is proper if a movant negates at least one
element of the nonmovant’s theory of recovery. Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex. 1995). A “no evidence” motion for summary judgment is
proper if, after adequate time for discovery, the movant shows that the nonmovant has
produced no evidence on at least one essential element of the nonmovant’s theory of
recovery. See Tex. R. Civ. P. 166a(I).THE HARRIS COUNTY ENTITIES’ SUMMARY JUDGMENTS
I.       INVERSE CONDEMNATION
          The Texas Constitution provides in pertinent part, “No person’s property shall
be taken, damaged or destroyed for or applied to public use without adequate
compensation being made, unless by the consent of such person . . . .” Tex.Const. art.
I, § 17. “Inverse condemnation” occurs when property is taken, damaged, or
destroyed for public use without process or without proper condemnation proceedings,
and the property owner attempts to recover compensation. City of Abilene v. Burk
Royalty Co., 470 S.W.2d 643, 646 (Tex. 1971); Allen v. City of Texas City, 775
S.W.2d 863, 864 (Tex. App.—Houston [1st Dist.] 1989, writ denied). Under section
17, a landowner may recover for damages to his property even though there is no
transfer of property rights. State v. Biggar, 848 S.W.2d 291, 297-98 (Tex.
App.—Austin 1993) aff’d, 873 S.W.2d 11 (Tex. 1994); Steele v. City of Houston, 603
S.W.2d 786, 790 (Tex. 1980).
          A. No Taking Because Flooding Was Isolated Incident
The Harris County entities argue that, because the flood was an isolated
incident, and not a recurring problem, they have proved there was no constitutional
“taking” as a matter of law. We agree. 
In Brazos River Auth. v. City of Graham, 354 S.W.2d 99 (Tex. 1962), the city
alleged that the river authority had taken three city-owned properties as a result of
flooding associated with the construction of the Possum Kingdom Dam. Id. at 101. 
Although all three of the properties were damaged by flooding on at least one or two
occasions, the evidence established that only one of the three properties, the city’s
sewage disposal plant, was subject to continuous, repeating flooding due to the dam. 
Id. at 104. Because the other two city-owned properties were subject to sporadic
flooding only, they had not been “taken” in a constitutional sense, and a jury verdict
awarding the entire value of the properties was reversed. Id. at 108-09.
Therefore, based on the holding of Graham, we agree that the plaintiffs’
properties have not been “taken,” and, like the plaintiff in Graham, they are not
entitled to recover the entire value of their properties, or any other type of damages
or relief that are available for a complete taking.
However, we do not agree that Graham compels the conclusion that plaintiffs
cannot recover for the “damage” to their property caused by the one-time flood. The
Graham court held a single flood would not support an award for the entire value of
the property flooded; it did not say that a plaintiff could never recover any damages
associated with a single flood. Id. at 107. To the contrary, the Graham court stated,
“Until a plaintiff is in a position so to establish the repetitious nature of the injury, he
should be confined in his demand for damages to those flowing directly from the
single injury or flooding. Id. at 108 (emphasis added). Therefore, we conclude that,
if the plaintiffs are able to prove the other elements of an inverse condemnation, the
fact that their suit is based on a single flood will not prevent them from recovering for
the damage to their homes, although they cannot recover the entire value of their
homes or other relief


 associated with a “taking,” rather than “damaging.”



B. Intent to Damage
The Harris County entities next contend that they are entitled to judgment as a
matter of law because they showed that they did not “intend” to take or damage the
plaintiffs’ property, and that their actions were, at best, negligent. The elements of a
constitutional taking of damaging are (1) the State intentionally performed certain acts
in the exercise of its lawful authority, (2) that resulted in a “taking” of property (3) for
public use. State v. Hale, 136 Tex. 29, 146 S.W.2d 731, 736 (1941); City of Abilene
v. Smithwick, 721 S.W.2d 949, 951 (Tex. App.—Eastland 1986, writ ref’d n.r.e.). 
However, negligence that merely contributes to the damage to or destruction of
property does not constitute a taking. City of Tyler v. Likes, 962 S.W.2d 489, 505
(Tex. 1997).
The Harris County entities argue that the plaintiffs failed to prove “intent,” an
essential element of constitutional taking. However, the parties disagree about what
the intent element must show. Plaintiffs argue that they need only prove intent to do
the act that caused the damage, while the Harris County entities argue that there must
be proof that they intended the damage that was the result of their act. This Court has
already addressed and decided this issue in the previous appeal, wherein we stated:
If, by their argument, plaintiffs mean that the State becomes liable for a
constitutional taking whenever it intentionally performs some act that,
through negligence, results in some harm to property, they are mistaken. 
Case law makes it clear that the State is not liable for damages caused by
negligence. However, the State may be liable if the damage is
necessarily incident to or necessarily a consequential result of an
authorized, intentional act.

Kerr, 45 S.W.3d at 252 (citations omitted). Thus, we conclude that the element of
“intent” in a constitutional takings case requires more than mere proof that the
government performed an intentional act that caused damage; the plaintiffs must also
show that the damage caused thereby was necessarily incident to or necessarily a
consequential result of the government’s intentional act. See also City of Houston v.
Renault, 431 S.W.2d 322, 326 (Tex. 1968) (holding city not liable for damage to cars
caused by maintenance of nearby culvert because plaintiff did not show that the city
knew that “flooding of the leased premises was resulting or was substantially certain
to result from the maintenance of the road with the existing culvert.”).
          Thus, we must determine whether the Harris County entities proved, as a matter
of law, that the flooding of plaintiffs homes was not “necessarily incident to or
necessarily a result of” their intentional acts in designing and implementing the flood
control plan for the White Oak Bayou watershed. Specifically, we are concerned with
whether the Harris County entities were aware that flooding of plaintiffs’ homes was
“substantially certain” to occur if they abandoned the Pate plan before completing
Phases III & IV, and, instead, implemented the plan set forth in the Klotz report by
placing the transition control structure in the bayou.
          The Harris County entities produced evidence that, had the Klotz report
indicated that the potential for flooding along the bayou would increase, they never
would have adopted the plan and erected the transition control structure. In contrast,
plaintiffs point to a letter dated August 9, 1989, in which Mr. James B. Green, director
of the District, told Mr. Robert Highland, a homeowner in one of the affected
subdivisions the following:
The Harris County Flood Control District is very aware of the house
flooding potential in Creekside Estates South and many other
subdivisions along White Oak Bayou . . . .

          The Homeowners also argue that the Pate plan recognized the need for
channelization in the plaintiffs’ area in the event that development without detention
ponds was permitted upstream from the homeowners, and, despite this knowledge, the
District did not complete the Phase III channelization, even though Harris County had
permitted the upstream development without detention. In essence, plaintiffs argue
that the Pate plan itself is proof that the Harris County entities had knowledge that
flooding would occur if the entire plan was not implemented.
          This evidence presents a clear question of fact regarding whether the actions of
the Harris County entities, in not completing the Pate plan, but in choosing to
implement the Klotz plan instead, created a condition whereby the flooding of the
plaintiffs’ homes was substantially certain to occur.
          The Harris County entities also argue that, in the last two years, they have
enacted the very remedial measures that the plaintiff’s expert, Peter Brown,
determined were necessary. The Harris County entities argue that by taking these
remedial measures, they have negated any intent to damage the plaintiffs’ homes. 
Citing Tarrant County v. English, 989 S.W.2d 368, 374 (Tex. App.—Fort Worth
1998, pet. denied), the Harris County entities argue that subsequent remedial measures
will negate intent as a matter of law. We disagree. In English, a landowner sued the
county when diesel that was spilled from two storage tanks on county land migrated
to his land and damaged it. Id. at 371-72. The court of appeals, noting that the county
had taken measures necessary to remove the tanks, found that no taking or damaging
had occurred, but that the landowner’s claim sounded in negligence. Id. at 374. 
However, we do not agree that the presence of subsequent remedial measures was the
deciding factor in the English case. More important to the court was the fact that the
county, at the time it was contaminating the soil of its own property, did not know that
the neighboring property was also being damaged. Id. 
          Therefore, we believe that, while subsequent remedial measures by the Harris
County entities is some evidence that they did not intend to damage the plaintiffs, it
does not negate the element of intent as a matter of law.
II.           NUISANCE
The Harris County entities also contend that they are entitled to summary
judgment on plaintiffs’ nuisance claims. To constitute a nuisance, thereby creating
potential liability for a governmental agency, the condition must substantially interfere
with a person’s use and enjoyment of land by causing unreasonable discomfort or
annoyance to the user’s ordinary sensibilities. Golden Harvest Co. v. City of Dallas,
942 S.W.2d 682, 689 (Tex. App.—Tyler 1997, writ denied); Shade v. City of Dallas,
819 S.W.2d 578, 581-83 (Tex. App.—Dallas 1991, no writ). For an act of a
governmental entity to qualify as a nuisance without being defeated by the doctrine
of governmental immunity, the condition created by the entity must in some way
constitute an unlawful invasion of property or the rights of others beyond that arising
merely from its negligent or improper use. Shade, 819 S.W.2d at 581-82. Non-negligent, or intentional nuisance is actionable, and the City is not immune under the
Texas Tort Claims Act. See Bible Baptist Church v. City of Cleburn, 848 S.W.2d 826,
829 (Tex. App.—Waco 1993, writ denied). Just as we have found there is a fact
question on the issue of intent relating to inverse condemnation, we also find a fact
question on the issue of intent relating to nuisance.
III.         ACT OF GOD
               There being a fact question regarding the Harris County entities’ intent to
damage plaintiffs on both the inverse condemnation and nuisance claims, we must
reverse the case for further proceedings unless the Harris County entities prevail on
the second ground asserted in support of their summary judgment, i.e., that they did
not cause the flooding, but that it was the result of unprecedented rainfall, i.e., an act
of God.
               For a rainfall to constitute an act of God, it must be “. . . such an unusual or
extraordinary rainfall as has no example or parallel in the history of rainfall in the
general vicinity affected, or as affords no reasonable warrant or expectation that it will
likely occur again, and so could not reasonably be expected, even at long intervals.” 
State v. Malone, 168 S.W.2d 292, 300 (Tex. Civ. App.—Austin 1943, writ ref’d
w.o.m.). “If . . . extraordinary inundations having occurred within the memory of men
then living, the occurrence should be anticipated, and provision made against the
danger likely to result from the works should a recurrence of the flood take place.” 
Id. (quoting Gulf, C. & S. F. Ry. Co. v. Pomeroy, 3 S.W. 722, 724 (Tex. 1887)).
               Plaintiffs’ expert, Larry Mays, testified that Tropical Storm Frances was not
an unprecedented flood because it was “on the order of a ten-year frequency.” 
Another plaintiffs’ expert, Baxter Vieux, calculated that the Tropical Storm Frances
produced between a 10- and 25-year flood event in the White Oak Bayou watershed. 
In contrast, defense expert, Andrew Yung, testified that Tropical Storm Frances
“produced the highest rainfall magnitude experienced by residents in the upper
Watershed since it has been developed [in the 1970's].” This level of rainfall, the
Harris County entities argue, is between a 50- and 100-year rainfall event.
               Given the disparity between the testimony of the expert witnesses about the
likely frequency of a rainfall such as that produced by Tropical Storm Frances, a clear
question of fact is presented. Therefore, the trial court erred by granting summary
judgment on the grounds of “act of God.”
IV. CONCLUSION REGARDING HARRIS COUNTY ENTITIES
               Because the Harris County entities did not negate the element of intent as
a matter of law on either the inverse condemnation claim or the nuisance claim, nor
did they prove their “act of God” defense as a matter of law, the trial court erred by
granting summary judgment in their favor. Accordingly, we reverse the inverse
condemnation claims and the nuisance claims and remand for further proceedings.



THE MUDS’ MOTIONS FOR SUMMARY JUDGMENT
               Again, we note that to prove a constitutional taking or damaging by the
MUDs, the plaintiffs must show that (1) the MUDS intentionally performed certain
acts in the exercise of their lawful authority, (2) that resulted in a “taking”or damaging
of property (3) for public use. State v. Hale, 146 S.W.2d at 736; City of Abilene v.
Smithwick, 721 S.W.2d at 951. The MUDs moved for summary judgment, alleging,
among other things, that they were entitled to summary judgment because the
plaintiffs did not prove any intentional act. Indeed, the sole reference to the MUDs
in appellants’ brief provides that the Harris County entities, “with the assistance and
knowledge of the MUDs,” intentionally performed certain acts that allegedly caused
the plaintiffs’ damages. There is no allegation in the briefs that the MUDs themselves
performed any intentional acts, nor is there any legal analysis or authority to show
how or why the MUDs should be held accountable for the actions of the Harris
County entities. As such, the briefing is inadequate to show that the trial court erred
by granting summary judgment in favor of the MUDs. See Tex. R. App. P. 38.1(h);
Franz v. Katy Indep. Sch. Dist., 35 S.W.3d 749, 755 (Tex. App.—Houston [1st Dist.]
2000, no pet.). Accordingly, we affirm the summary judgments granted in their favor.
ENGINEERING COMPANY’S MOTION FOR SUMMARY JUDGMENT
               Plaintiffs also sued Jones & Carter, Inc., an engineering company involved
in the development of Brookhollow subdivision. The engineering company moved
for summary judgment based on the statute of repose, which the trial court granted.
The statute of repose applicable to engineers provides as follows:
A person must bring suit for damages for a claim listed in
subsection (b) against a registered or licensed architect, engineer,
interior designer, or landscape architect in this state, who designs,
plans, or inspects the construction of an improvement to real
property or equipment attached to real property, not later than ten
(10) years after the substantial completion of the improvement or
the beginning of operation of the equipment in an action arising
out of a defective or unsafe condition of the real property, the
improvement, or the equipment.

Tex. Civ. Prac. & Rem. Code Ann. § 16.008(a) (Vernon 2002) (emphasis added). 
The purpose of the statute of repose is to protect those who design, install, or construct
an improvement from facing never-ending potential liability based on that work. 
Reames v. Hawthorne-Seving, Inc., 949 S.W.2d 758, 761 (Tex. App.—Dallas 1997,
writ denied). The statute of repose differs from traditional statutes of limitations in
that the time period begins running when the improvement is substantially completed,
rather then when the damage or injury occurs or is discovered. Id.; see also Gordon
v. Western Steel Co., 950 S.W.2d 743, 745-46 (Tex. App.—Corpus Christi 1997, pet.
denied).
               As summary judgment proof, Jones & Carter introduced the affidavit of J.
R. Jones , an engineer for Jones & Carter, who testified that the company was hired
in 1982 by Brookhollow corporation to assist in developing section 5 of the business
park. In connection with the job, Jones & Carter prepared engineering drawings that
led to the eventual construction of streets, waterlines, utility lines, sanitary sewer lines,
drainage and detention facilities in Brookhollow West section 5. Jones & Carter also
designed and constructed a single street in Brookhollow West section 9. In
connection with these projects, Jones & Carter introduced Certificates of Substantial
Completion, which indicated that the last of the projects was competed January 10,
1985, well over 10 years before suit was filed in this case.
               Despite this evidence, plaintiffs contend there is a question of fact as to
whether Jones & Carter’s work was substantially complete. Specifically, plaintiffs
introduced evidence that in 1998, Jones & Carter produced an estimate to
Brookhollow Corporation about the cost of proposed improvements to a different
section of Brookhollow West. Essentially, plaintiffs argue that, as long as there are
sections of Brookhollow West yet to be developed, Jones & Carter’s work is not
substantially complete.
               We disagree. There is nothing in the record to indicate that Jones & Carter
was under a continuing obligation to perform work for Brookhollow Corporation, or
that Brookhollow Corporation would choose to use Jones & Carter if further
improvements or development was performed. Jones & Carter conclusively
established that they substantially completed work in the affected sections of
Brookhollow West in 1985, and have not participated in the design or construction of
any improvements in the area since that time. Accordingly, the trial court properly
granted summary judgment on Jones & Carters’ motion for summary judgment.
 

CONCLUSION
               We affirm the summary judgments in favor of the MUDs and Jones &
Carter. However, we reverse the summary judgments in favor of the Harris County
entities and remand the claims against the Harris County entities for further
proceedings.
 
 
                                                                        Frank C. Price



                                                                        Justice


Panel consists of Justices Nuchia, Hanks, and Price.