IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-02-00026-CV

 

Providence Health Center 

a/k/a Daughters of Charity 

Health Services of Waco; AND

DePaul Center a/k/a
Daughters of

Charity Health Services of Waco,

                                                                      Appellants

 v.

 

Jimmy and Carolyn Dowell, 

Individually and on behalf 

of the Estate of 

Jonathan Lance Dowell, Deceased,

                                                                      Appellees

 

 

 



From the 170th District Court

McLennan County, Texas

Trial Court # 99-2717-4

 



DISSENTING Opinion



 








      This
is an appeal of a wrongful death and survival suit.  We should reverse and render.  Because the majority does not do so, I
respectfully dissent.

      In
Appellants’ first issue, they contend that there was no evidence of proximate
cause and no evidence that Appellants failed to perform an appropriate
psychiatric screening examination.  See 42 U.S.C. § 1395dd(a) (2000).

      Appellees
contend that Appellants waived their issue by failing to object to the
testimony of one of Appellees’ expert witnesses.  The cases cited by Appellees, to the extent
that they are on point, concern the waiver of objections to the methodological
reliability of expert testimony, not the sufficiency of the evidence.  See Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 409 (Tex. 1998); Crown
Cent. Petroleum Corp. v. Coastal Transp. Co., 38 S.W.3d 180, 190 (Tex.
App.—Houston [14th Dist.] 2001), rev’d, 136 S.W.3d 227 (Tex. 2004); Gen.
Motors Corp. v. Castaneda, 980 S.W.2d 777, 780 n.2 (Tex. App.—San Antonio
1998, pet. denied).[1]  By
making an objection to the charge, filing a motion to disregard jury questions
and for judgment notwithstanding the verdict, and filing a motion for new
trial, all on the grounds that there was no evidence of proximate cause,
Appellants preserved their no-evidence complaint.  See
Kerr-McGee Corp. v. Helton, 133 S.W.3d 245, 259 (Tex. 2004); T.O.
Stanley Boot Co. v. Bank of El
 Paso,
847 S.W.2d 218, 220 (Tex.
1992).

      Lance
Dowell was admitted to the Providence Health
 Center emergency room for treatment of shallow
self-inflicted cuts to his wrists.  A
nurse employed by Appellants performed a psychological evaluation of
Lance.  Appellees contend that Appellants
failed to promulgate or enforce policies for psychological screenings, that the
nurse failed to perform an appropriate screening, and that these failures
caused Lance’s death.  The undisputed
evidence was that when the nurse evaluated Lance, Lance was lucid, calm,
remorseful, stable, and not actively suicidal. 
There is no evidence that, if Appellants had recommended admission to
the DePaul Center, a psychiatric hospital, Lance would have agreed or could have
been compelled to be admitted.  After
Lance was released from Providence to Appellees, and until his death, they saw nothing out of the
ordinary about him except that he was “more withdrawn.”  The day that he was released from the
hospital, Lance visited with his family, went to a rodeo, and visited with friends.  The next day, he had lunch with his family
and helped a friend bale hay.  About a
day and a half after he left Providence, Lance hanged himself.  Appellees’ expert testified, at most, that
had Lance been admitted to DePaul the probability that he would commit suicide
upon his release would have been reduced.

      Under
these facts, there is no evidence that Appellants’ conduct was a substantial
cause of Lance’s death.  See IHS Cedars Treatment Ctr. of Desoto, Tex., Inc.
v. Ramos, 47 Tex. Sup. Ct. J. 666, 668-69, 2004 Tex. LEXIS 534, at *8-*13 (Tex. June 18, 2004); Marathon
Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003); St.
 Joseph Hosp. v. Wolff, 94 S.W.3d 513, 519-20 (Tex. 2002); Dallas County Mental
Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 343-44 (Tex. 1998). 
Accordingly, we should sustain Appellants’ first issue.

      We
should, then, after sustaining Appellants’ first issue, reverse and render
judgment that Appellees take nothing from Appellants.  Therefore, we should not consider Appellants’
other issues.

      Because
the disposition of the first issue would be dispositive of the appeal, I will
not discuss my disagreements with the remainder of the majority’s opinion.  I note only in passing that an estate, by
that name, is not a proper party to litigation. 
Embrey v. Royal Ins. Co. of Am., 22
S.W.3d 414, 415 n.2 (Tex.
2000); Price v. Estate of Anderson, 522
S.W.2d 690, 691 (Tex. 1975).  I
also note that two notices of appeal from the same judgment should bear the
same docket number on appeal.  Tex. R. App. P. 12.2(c).  Docketing this cause and Cause No. 10-01-00420-CV,
styled Pettit v. Dowell, as two
separate appeals was improper.

TOM
GRAY

Chief Justice

Dissenting
opinion delivered and filed October 6, 2004

 











[1]       See
also Coastal Transp. Co v. Crown Cent. Petroleum Corp., 136 S.W.3d 227,
231-33 (Tex. 2004); Kerr-McGee Corp. v. Helton, 133 S.W.3d
245, 252 (Tex. 2004).








weight: bold">FACTUAL BACKGROUND
      Appellants both worked for DISD as plumbers during the pertinent time period. DISD
purchased a manufacturing facility located in Dallas from Proctor & Gamble Manufacturing
Company (“P & G”) in August 1994. P & G had previously used this facility to manufacture
various household products. After acquiring the property, DISD undertook renovation efforts
to convert the property to use as a maintenance facility.
      Appellee Jack Lowrey was the General Maintenance Supervisor for DISD’s Environmental
Services Division. In February 1995, he assigned Appellants to the P & G site to lay a
sprinkler line adjacent to the building. Appellants cut through several existing underground
pipelines and tanks while digging the trench for the sprinkler line. As a result, they “began to
encounter large amounts of chemicals and industrial waste which got on their clothes and
which fumes they inhaled while working in the ditch.” They allege that, when they
approached their supervisors about the situation, the “supervisors told them to shut up and to
keep working.”
      After Appellants “began to experience respiratory symptoms and other distress,” they
contacted the Texas Natural Resource Conservation Commission (“TNRCC”). As a result, a
TNRCC investigator came to the site on February 10. Appellants contend that, after this
investigator left, Appellees Lowrey and Jeffrey Brogden “insinuated” that they had called
TNRCC.


 Lowrey instructed them to let him handle any further concerns they had about toxic
substances at the P & G site because DISD could not afford to halt work “every time they dug
something up.” Lowrey and Brogden told Appellants to resume their work.
      TNRCC advised Appellee David Strobel


 on February 17 that the investigator’s inspection
and a review of soil samples removed from the site in November 1994 indicated the presence
of various contaminants at the site.


 Appellants encountered other unknown substances as they
continued their work. Their supervisors instructed them to finish the job.
      On April 5, Appellants contacted a Texas Workers’ Compensation Commission
(“TWCC”) hotline. In response, TWCC asked DISD to provide a written report on the
matter. Appellants encountered an underground tank containing an unknown substance on
April 13. They contacted Basso who had previously inspected the site on several occasions
and asked her to take a sample of this unknown substance for testing. Lowrey advised
Appellants through their immediate supervisor that he had instructed Basso not to go to the
site. Later on that date, workers cut through a pipeline, causing a liquid to fill the trench
which made their eyes water. Lowrey then asked Basso to come to the site and collect
specimens.
      TNRCC received a letter from Strobel on April 24 advising that DISD would conduct a
more-detailed study of possible contaminants at the P & G site. On May 25, Basso advised
TNRCC that testing had disclosed the presence of several contaminants at the site.
      Lowrey summoned Watson to his office on June 1. Perry accompanied Watson to
Lowrey’s office. A heated discussion ensued in which Lowrey threatened to fire Watson for
insubordination. At some point, Brogden joined the meeting. Lowrey would not allow
Watson to leave Lowrey’s office until they could “get some things straight” about the TNRCC
matter. He threatened to fire Watson if he did leave. Watson refused to discuss the matter
without representation. He testified in his deposition that Lowrey fired him at
“[a]pproximately 10:00" that morning but reinstated him “at quitting time.” Lowrey and
Brogden threatened to fire Perry as well that morning.
      On July 21, Lowrey placed Appellants on probation for insubordination. Appellee Ellis
Hunter reassigned Appellants to a different plumbing division on August 11 because of a
“conflict of personalities” with Lowrey.


 However, Appellants objected to their new
assignment because it required them to report at least initially to the P & G site. Hunter
testified that they only had to report at the site but would work at other sites.



PROCEDURAL BACKGROUND
      Appellants instituted a grievance proceeding in accordance with DISD policy in early June
1995. The level one grievance hearing was held on June 7. The level two hearing was held in
late August/early September. Appellants filed suit on August 31, 1995. A level three
grievance hearing was conducted in January 1996. A DISD attorney informed Appellants at
the level three hearing that the grievance proceeding would be held “in abeyance” until their
lawsuit was resolved.
      Appellants name the following as defendants in their petition: DISD, P & G, Strobel,
Lowrey, Brogden, Hunter, Strobel’s supervisor Michael Henderson,


 and DISD Risk
Management Specialist Bernard Cousin.


 Appellants served requests for admissions on all
defendants save Strobel on January 10, 1997.


 Appellants served requests for admissions on
Strobel on January 30. Appellants’ counsel agreed to extend the due date for Appellees’
responses. However, the parties dispute the length of time they agreed to extend the deadline.
      A paralegal employed by Appellees’ counsel sent a letter to Appellants’ counsel on
February 20 confirming that Appellants’ counsel had agreed to extend the deadline to March 7. 
Appellants’ counsel signed the letter indicating his agreement to the extension. The individual
defendants filed their responses on March 14. DISD filed its response on November 13, 1998
as an attachment to Appellees’ joint motion to withdraw deemed admissions.
      The individual defendants filed summary judgment motions on April 27, 1999.


 
Appellants countered with a motion for partial summary judgment on May 12 premised on
Appellees’ deemed admissions of liability. Appellants filed a response to the defendants’
summary judgment motions on May 28 and requested a continuance in the event the court
granted the motion to strike the deemed admissions.
      The court heard Appellees’ motion to strike the deemed admissions and the summary
judgment motions on June 3. At the conclusion of the hearing, the court orally granted
Appellees’ motion to strike the deemed admissions, denied both sides’ summary judgment
motions, and denied Appellants’ request for a continuance. The court advised the parties that a
pretrial hearing would be conducted on July 29.
      The individual defendants filed motions for summary judgment against Appellants on June
7 which are substantially similar to their original motions. They contend that they are entitled
to judgment as a matter of law because: (1) they are immune from the majority of Appellants’
claims: (2) there is no evidence to support the conspiracy and intentional failure to provide a
safe workplace claims; (3) Appellants failed to exhaust their administrative remedies before
filing their whistleblower claim; (4) individuals cannot be sued for whistleblower violations;
and (5) the workers’ compensation statutes provide the exclusive remedy for Appellants’ work-related injuries. 
      DISD filed a motion for summary judgment one month later. DISD claims that it is
entitled to judgment as a matter of law because: (1) it is immune from Appellants’ tort claims
(all but the whistleblower claim); (2) because the workers’ compensation statutes provide the
exclusive remedy for Appellants’ work-related injuries; and (3) because there is no evidence to
support any of Appellants’ claims.
      The individual defendants filed a supplemental summary judgment motion thereafter
asking the court to grant them summary judgment under section 101.106 of the Texas Tort
Claims Act if the court granted DISD’s summary judgment motion on Appellants’ tort claims.
      The court signed an order on August 6 granting DISD’s summary judgment motion
without specifying the basis for its decision. The court signed an order on August 10 granting
the individual defendants’ summary judgment motions without specifying the basis for its
decision.
DEEMED ADMISSIONS
      Appellants contend in their third point that the court abused its discretion by allowing
Appellees to withdraw their deemed admissions. Rule of Civil Procedure 198.3 governs the
court’s decision to permit the withdrawal of deemed admissions.


 Rule 198.3 provides:
Any admission made by a party under this rule may be used solely in the pending
action and not in any other proceeding. A matter admitted under this rule is
conclusively established as to the party making the admission unless the court permits
the party to withdraw or amend the admission. The court may permit the party to
withdraw or amend the admission if:

            (a) the party shows good cause for the withdrawal or amendment; and
 
(b) the court finds that the parties relying upon the responses and deemed
admissions will not be unduly prejudiced and that the presentation of the merits of the
action will be subserved by permitting the party to amend or withdraw the admission.

Tex. R. Civ. P. 198.3. Because Rule 198.3 is substantially similar to its predecessor Rule
169(2), we apply the cases construing the former rule. See Morgan v. Timmers Chevrolet,
Inc., 1 S.W.3d 803, 807 n.4 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).



      A trial court has broad discretion to grant or deny a request to withdraw deemed
admissions. Stelly v. Papania, 927 S.W.2d 620, 622 (Tex. 1996) (citing Employers Ins. of
Wausau v. Halton, 792 S.W.2d 462, 464 (Tex. App.—Dallas 1990, writ denied)). We will set
aside this determination “only if, after reviewing the entire record, it is clear that the trial court
abused its discretion.” Id. Under settled law, a trial court abuses its discretion when it “acts
without reference to guiding rules or principles, or acts arbitrarily or unreasonably.” Id.
(citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex. 1985)).
      A party seeking to withdraw deemed admissions must first establish “good cause for the
withdrawal.” Tex. R. Civ. P. 198.3(a). A party does so “by showing that its failure to
answer was accidental or the result of a mistake, rather than intentional or the result of
conscious indifference.” Stelly, 927 S.W.2d at 622 (citing N. River Ins. Co. v. Greene, 824
S.W.2d 697, 700 (Tex. App.—El Paso 1992, writ denied); accord Wal-Mart Stores, Inc. v.
Deggs, 968 S.W.2d 354, 356 (Tex. 1998) (per curiam).
      If good cause is shown, a court may permit the withdrawal of deemed admissions if it
finds that the party relying on the admissions “will not be unduly prejudiced and that the
presentation of the merits of the action will be subserved” thereby. Tex. R. Civ. P. 198.3(b). 
Undue prejudice has generally been found in those instances in which a party waited until the
day of trial or after to request the withdrawal of deemed admissions. See, e.g., Morgan, 1
S.W.3d at 807; Texas Employers’ Ins. Assn. v. Bragg, 670 S.W.2d 712, 716 (Tex.
App.—Corpus Christi 1984, writ ref’d n.r.e.); Trevino v. Central Freight Lines, Inc., 613
S.W.2d 356, 358-59 (Tex. Civ. App.—Waco 1981, no writ).
      At least one court has commented that an offer by the party seeking withdrawal of deemed
admissions to pay the opposing party’s attorney’s fees incurred in responding to the withdrawal
request can mitigate any prejudice the opponent might suffer from the withdrawal of the
admissions. See Employers Ins., 792 S.W.2d at 467; cf. United Beef Producers, Inc. v.
Lookingbill, 532 S.W.2d 958, 959 (Tex. 1976) (per curiam) (defendant seeking to set aside
default judgment should be required to reimburse plaintiff for costs of suit).



      The record in this case reflects that Appellants served virtually identical requests for
admissions on each of the Appellees. After more than thirty days had passed, counsel for
Appellees asked for additional time to respond to the requests. The attorneys agreed to an
extension, but the parties now dispute the terms of this agreement. A paralegal employed by
Appellees’ counsel faxed a letter to Appellants’ counsel memorializing the agreement. 
According to this letter, the parties agreed that Appellees’ responses would be due on March 7. 
Appellants’ counsel signed this letter indicating his agreement and returned a copy to
Appellees’ counsel.
      All the Appellees except DISD filed their responses to the requests for admissions on
March 14. Neither side made further reference to the apparently untimely responses until
Appellants’ counsel mentioned the issue during settlement discussions in July 1998. Between
March 1997 when the individual defendants served their responses on Appellants’ counsel and
July 1998 when Appellants’ counsel mentioned that these responses were late and DISD had
wholly failed to respond, DISD retained new counsel. In addition, the particular attorney who
had represented Appellees in March 1997 left the law firm during this time period and her
supervisor took up the case.
      After being advised of this issue, DISD’s present counsel contacted the former attorney,
reviewed the files, and began preparing a motion to withdraw the deemed admissions
supported in part by DISD’s responses to the requests for admissions. Appellees filed their
joint motion to withdraw the deemed admissions in November 1998, four months after
Appellants called the issue to their attention. Appellees supported this motion with a copy of
the letter memorializing the extension agreement and affidavits from the attorney who
represented Appellants in March 1997 when the agreement was reached, her supervisor who
took over the individual Appellees’ case when she left, and DISD’s present counsel.
      Appellees’ former counsel states in her affidavit that she believes that the parties had
agreed to extend the deadline to March 17 and that this date was significant to her because it
meant that the responses would not be due until the Monday after spring break. She instructed
her paralegal to prepare a letter confirming the parties’ agreement. She states that her failure
to serve a response on behalf of DISD was unintentional. She notes that the extension
agreement involved responses to twenty-one separate discovery documents and that she
believed she had responded to all twenty-one. The information that she had failed to serve a
response on behalf of DISD “was a complete surprise.”
      The supervising attorney who took over the case in 1998 states in his affidavit that the
“lengthy discovery” initiated by both parties and in which he had participated after March
1997 led him to believe that all prior discovery had been timely filed.
      DISD’s present counsel describes in her affidavit the steps she took after Appellants’
counsel advised her of DISD’s failure to respond to the requests for admission. After she
reviewed the file, consulted with DISD’s former counsel, and verified that DISD had never
responded to the discovery requests, her office “immediately began working on the [motion to
withdraw the deemed admissions].”
      Appellants’ counsel countered with his own affidavit that the parties’ original agreement
was to extend the time for the Appellees’ discovery responses to March 7, not March 17. He
attached a copy of his calendar for March 1997 which contains a handwritten notation on
March 7 indicating that discovery responses were due on that date in the Watson case. He also
attached a copy of a letter he mailed to his clients on February 21 informing them that he had
agreed to extend the Appellees’ deadline to March 7.
      At the hearing on Appellees’ motion to withdraw the deemed admissions, Appellees noted
that good cause for the withdrawal was shown because of counsel’s good faith belief that the
parties had agreed to extend the deadline to March 17, because of counsel’s inadvertent failure
to include DISD’s response in those she served on Appellants’ counsel on March 14, and
because Appellants’ counsel did not call this issue to the attention of Appellees’ counsel until
more than a year after the responses were deemed admitted. They argued that Appellants
would not be unduly prejudiced by a withdrawal of the deemed admissions because: (1) the
case was not yet set for trial; (2) Appellants had been in possession of the individual Appellees’
responses for more than two years; (3) they had been in possession of DISD’s responses for
more than six months; and (4) many of the requests which were deemed admitted were
improper because they asked for admissions on questions of law rather than questions of fact.
      Appellants responded that the paralegal’s letter conclusively disproves Appellees’
supposed good-faith belief that the parties had agreed to extend the deadline to March 17 and
that DISD’s four-month delay in filing its motion to withdraw and the untimely discovery
responses after learning of the problem vitiated any good cause they may have shown. 
Appellants argued that they would be unduly prejudiced by a withdrawal of the deemed
admissions because they had based their discovery and trial preparation strategy during that
two-year period in “large part” on the deemed admissions.



      Appellees’ counsel states that she believed the parties had agreed to extend the deadline to
March 17. She apparently never reviewed the confirmation letter drafted by her paralegal. 
While the letter and other documentary evidence proffered by Appellants suggest that the
parties had agreed to a March 7 deadline, we cannot say from the evidence presented that the
court abused its discretion in determining that the individual Appellees had shown good cause
for a withdrawal of their deemed admissions.


 See In re A.M.G., 5 S.W.3d 836, 839 (Tex.
App.—San Antonio 1999, no pet.); N. River Ins. Co., 824 S.W.2d at 700-01; Fibreboard
Corp. v. Pool, 813 S.W.2d 658, 683 (Tex. App.—Texarkana 1991, writ denied).
      The fact that Appellees’ counsel was juggling twenty-one discovery requests aimed at
seven different clients supports a finding of good cause for counsel’s failure to prepare a
response on behalf of DISD. See Fibreboard Corp., 813 S.W.2d at 683. Conversely, the
four-month delay between the time Appellants’ counsel advised DISD’s counsel that no
response had been made and the time DISD filed its responses tends to vitiate any good cause
shown. See Darr v. Altman, 20 S.W.3d 802, 808 (Tex. App.—Houston [14th Dist.] 2000, no
pet.). However, this delay must be tempered by the explanation proffered by DISD’s counsel
for the delay. When these competing considerations are viewed in light of the broad discretion
vested in a trial court to determine whether deemed admissions should be withdrawn, we
cannot say that the court abused its discretion by determining that DISD had shown good cause
for the withdrawal of the deemed admissions.
      Because the responses of the individual Appellees were in Appellants’ possession for all
but ten days of the more than two years between the date Appellants contend they were due
and the date of the hearing on Appellees’ motion to withdraw the deemed admissions, we
cannot say the court abused its discretion in determining that Appellants would not be unduly
prejudiced by the withdrawal of the deemed admissions attributed to the individual Appellees
and that the merits of the case would be subserved thereby. See A.M.G., 5 S.W.3d at 839;
Fibreboard, 813 S.W.2d at 682-83; Employers Ins., 792 S.W.2d at 467.
      DISD contends that Appellants were not unduly prejudiced by the withdrawal of its
deemed admissions because DISD’s responses to Appellants’ requests for admissions are
substantially similar to those of the individual Appellees. Appellants do not dispute DISD’s
assertion that its responses are similar. Because Appellants had been in possession of the
individual Appellees’ responses for more than two years and of DISD’s responses for more
than six months at the time of the hearing and because they had almost two months to prepare
before the next pre-trial setting, we cannot say the court abused its discretion in determining
that Appellants would not be unduly prejudiced by the withdrawal of DISD’s deemed
admissions and that the merits of the case would be subserved thereby. Id.
      Accordingly, we overrule Appellants’ third point.
DISD’S SUMMARY JUDGMENT
      Appellants argue in their first point that the court erred by granting DISD’s summary
judgment motion because DISD failed to establish its entitlement to judgment as a matter of
law on the issues of sovereign immunity and the exclusivity of remedies provided by the
workers’ compensation statutes.


 They contend in their second point that the court erred by
granting DISD’s no-evidence summary judgment motion because they presented sufficient
controverting evidence to raise a genuine issue of material fact on each element challenged by
the motion.
Standards of Review
      To prevail on a summary judgment motion, the movant must demonstrate that there are no
genuine issues of material fact and that it is entitled to judgment as a matter of law. See
American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr. Prop.
Management Co., 690 S.W.2d 546, 548 (Tex. 1985); Fletcher v. Edwards, 26 S.W.3d 66, 73
(Tex. App.—Waco 2000, pet. denied). We disregard all conflicts in the evidence and accept
the evidence favoring the nonmovant as true. See Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965); Fletcher, 26 S.W.3d at 73. We
indulge every reasonable inference from the evidence in favor of the nonmovant and resolve
any doubts in its favor. See American Tobacco, 951 S.W.2d at 425; Fletcher, 26 S.W.3d at
73.
      A trial court cannot grant summary judgment on a ground not expressly presented in the
summary judgment motion. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex.
1996); Fletcher, 26 S.W.3d at 74. “When the trial court does not specify the basis for its
summary judgment, the appealing party must show it is error to base it on any ground asserted
in the motion.” Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995); Fletcher, 26
S.W.3d at 74. We consider only those grounds “the movant actually presented to the trial
court” in the motion. Cincinnati Life Ins., 927 S.W.2d at 625 ; Fletcher, 26 S.W.3d at 74.
      We apply the same standard in reviewing a no-evidence summary judgment as we would
in reviewing a directed verdict. See Robinson v. Warner-Lambert Co., 998 S.W.2d 407, 410
(Tex. App.—Waco 1999, no pet.); Moore v. K-Mart, 981 S.W.2d 266, 269 (Tex. App.—San
Antonio 1998, pet. denied). We review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. See Morgan v. Anthony, 27
S.W.3d 928, 929 (Tex. 2000); Robinson, 998 S.W.2d at 410; Moore, 981 S.W.2d at 269. A
no-evidence summary judgment will be defeated if the non-movant produces more than a
scintilla of probative evidence to raise a genuine issue of material fact on the elements
challenged by the movant. Id.
Sovereign Immunity
      Sovereign immunity has two components: immunity from suit and immunity from liability. 
See Wichita Falls St. Hosp. v. Taylor, 106 S.W.3d 692, 696 (Tex. 2003). Immunity from suit
protects government entities and officials from suit. See Tex. Dept. of Transp. v. Jones. 8
S.W.3d 636, 638 (Tex. 1999). Immunity from liability protects government agencies and
officials from judgment even if immunity from suit has been waived. Id. Immunity from suit
can be waived only by statute or legislative resolution. See Wichita Falls St. Hosp., 106
S.W.3d at 696.
      A statute will constitute a legislative waiver of immunity from suit only if it does so by
“clear and unambiguous” language. Id. A statute satisfies this test if it expressly states that
immunity is waived or if the statute would be meaningless if immunity was not waived
thereby. See Wichita Falls St. Hosp., 106 S.W.3d at 697; Kerrville State Hosp. v. Fernandez,
28 S.W.3d 1, 3, 5-6 (Tex. 2000); City of LaPorte v. Barfield, 898 S.W.2d 288, 291-92, 296-97 (Tex. 1995).
      The Texas Tort Claims Act expressly waives the immunity of governmental units for
injury or death caused by certain premises defects and for “property damage, personal injury,
or death aris[ing] from the operation or use of a motor-driven vehicle or motor-driven
equipment.” Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 1997). The Tort
Claims Act preserves the common-law immunity of school districts and junior college districts
“[e]xcept as to motor vehicles.” Id. § 101.051 (Vernon 1997); Williams v. Conroe Indep. Sch.
Dist., 809 S.W.2d 954, 957 (Tex. App.—Beaumont 1991, no writ). It does not waive
immunity for intentional torts. See Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2)
(Vernon 1997); Harris County v. Cypress Forest Pub. Util. Dist., 50 S.W.3d 551, 553-54
(Tex. App.—Houston [14th Dist.] 2001, no pet.); City of Hempstead v. Kmiec, 902 S.W.2d
118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ); City of San Antonio v. Dunn, 796
S.W.2d 258, 261 (Tex. App.—San Antonio 1990, writ denied).
      Article I, section 17 of the Texas Constitution waives immunity from suit and liability for
governmental taking, damage or destruction of private property “without adequate
compensation.”


 Tex. Const. art. I, § 17; Gen. Servs. Commn. v. Little-Tex. Insulation Co.,
39 S.W.3d 591, 598 (Tex. 2001); Cozby v. City of Waco, 110 S.W.3d 32, 38 (Tex.
App.—Waco 2002, no pet.). An intentional nuisance claim falls within the waiver of
immunity provided by article I, section 17.


 See City of Abilene v. Downs, 367 S.W.2d 153,
159 (Tex. 1963); Cozby, 110 S.W.3d at 40; Montgomery County v. Fuqua, 22 S.W.3d 662,
667-68 (Tex. App.—Beaumont 2000, pet. denied).
Appellants’ Claims
      Appellants allege causes of action for intentional pollution, intentional nuisance, fraud,
intentional infliction of emotional distress, conspiracy, aggravation of work-related injury,
breach of duty of good faith and fair dealing, intentional violation of statutes requiring an
employer to maintain a safe workplace, and violation of the whistleblower statutes.
The Workplace Statutes
      Appellants contend that the statutes relative to a safe workplace, which they allege DISD
violated, implicitly waive DISD’s immunity from suit. A so-called “implicit waiver” of
sovereign immunity arises when the statute at issue would be meaningless if immunity was not
waived thereby. See Wichita Falls St. Hosp., 106 S.W.3d at 697; Kerrville State Hosp., 28
S.W.3d at 5-6; Barfield, 898 S.W.2d at 296-97. Thus, Texas courts have determined that
some statutes necessarily waive immunity even though they do not do so expressly. See, e.g.,
Kerrville State Hosp., 28 S.W.3d at 5-10 (State Applications Act [Tex. Lab. Code Ann. §§
501.001-501.051 (Vernon 1996 & Supp. 2004)] which expressly incorporates anti-retaliation
law [Tex. Lab. Code Ann. § 451.001 (Vernon 1996)]); Barfield, 898 S.W.2d at 296-99
(political subdivisions workers’ compensation statute [Tex. Lab. Code Ann. § 504.002 
(Vernon Supp. 2004)] which expressly incorporates anti-retaliation law); Alamo Community
College Dist. v. Obayashi Corp., 980 S.W.2d 745, 747-48 (Tex. App.—San Antonio 1998,
pet. denied) (ch. 130 of Education Code); see also Tex. Educ. Agency v. Leeper, 893 S.W.2d
432, 446 (Tex. 1994) (Uniform Declaratory Judgments Act waives immunity from suit in
actions brought to construe legislative pronouncements); but see Tex. Nat. Resource
Conservation Commn. v. IT-Davy, 74 S.W.3d 849, 855-56 (Tex. 2002) (UDJA does not waive
immunity from suit in actions “against state officials seeking to establish a contract’s validity,
to enforce performance under a contract, or to impose contractual liabilities”).
      The two statutes at issue are the Hazard Communication Act and section 411.103 of the
Labor Code. See Tex. Health & Safety Code Ann. §§ 502.001-502.020 (Vernon 2003);
Tex. Lab. Code Ann. § 411.103 (Vernon 1996). By its express terms, the Hazard
Communication Act applies to the State and political subdivisions of the State, including “a
public school.” See Tex. Health & Safety Code Ann. § 502.003(11). In general terms,
this enactment requires an employer to: (1) maintain a list of hazardous chemicals present at a
work site and make employees aware of the list before working at the site; (2) provide
appropriate safety data to employees who transport hazardous chemicals; (3) maintain
appropriate labels on containers of hazardous chemicals; and (4) provide education and training
to employees who use or handle hazardous chemicals. Id. §§ 502.005, 502.006, 502.007,
502.009. 
      The Hazard Communication Act authorizes the Director of the Texas Department of
Health or his representative to investigate complaints submitted by employees relating to
violations of the Act. Id. § 502.011. The enactment provides for administrative penalties; it
authorizes an employer to seek judicial review of such penalties under the Administrative
Procedure Act; and it authorizes the Director to ask the attorney general or a district, county or
city attorney to file suit against an employer for injunctive relief and for the assessment and
recovery of civil penalties. Id. §§ 502.014-502.015. However, the Hazard Communication
Act does not provide for an employee lawsuit to seek redress for violations of the statute. 
Accordingly, we conclude that the Hazard Communication Act does not waive immunity from
a suit brought by an employee for alleged violations. 
      Section 411.103 of the Labor Code represents a non-substantive codification of section 3
of the former article 5182a.


 Compare Tex. Lab. Code Ann. § 411.103 with Act of May 27,
1985, 69th Leg., R.S., ch. 931, art. 11, § 1, sec. 3, 1985 Tex. Gen. Laws 3121, 3151,
repealed by Act of Apr. 25, 1995, 74th Leg., R.S., ch. 76, § 9.54(c), 1995 Tex. Gen. Laws 
458, 657; see also Good v. Dow Chem. Co., 945 S.W.2d 877, 879 n.1 (Tex. App.—Houston
[1st Dist.] 1997, no writ). Section 411.103 provides:
      § 411.103. Duty of Employer to Provide Safe Workplace

      Each employer shall:
 
(1) provide and maintain employment and a place of employment that is
reasonably safe and healthful for employees;
 
(2) install, maintain, and use methods, processes, devices, and safeguards,
including methods of sanitation and hygiene, that are reasonably necessary to protect
the life, health, and safety of the employer's employees; and
 
(3) take all other actions reasonably necessary to make the employment and place
of employment safe. 

Tex. Lab. Code Ann. § 411.103.



      Unlike the Hazard Communication Act which expressly includes the State and its political
subdivisions in the definition of employers to which that enactment applies, chapter 411 of the
Labor Code does not include the State or any political subdivision of the State within its
definitional provisions. Compare Tex. Health & Safety Code Ann. § 502.003(11) with
Tex. Lab. Code Ann. § 411.102(3) (Vernon 1996). Instead, it appears that chapter 411 is
aimed solely at private employers. See, e.g., Tex. Lab. Code Ann. § 411.101 (Vernon 1996)
(chapter 411 concerned with safety “in industry and enterprise”), § 411.102(4) (Vernon 1996)
(“[p]lace of employment means a location . . . where . . . trade, industry, or business is . . .
conducted” or “an employee is . . . employed by another for direct or indirect gain”). 
Accordingly, we conclude that chapter 411 of the Labor Code does not constitute a legislative
waiver of immunity from suit or liability. See Foster v. Denton Indep. Sch. Dist., 73 S.W.3d
454, 462-63 (Tex. App.—Fort Worth 2002, no pet.)
      For these reasons, we hold that neither of the workplace statutes which Appellants contend
DISD violated waives DISD’s immunity from suit.
 

The Tort Claims
      Appellants characterize their allegations that DISD intentionally violated the two
workplace statutes cited above and aggravated their work-related injuries as intentional torts. 
Based on the foregoing holding regarding the statutes, Appellants’ characterization of these
claims, and settled law, we conclude that all of Appellants’ claims, with the exception of the
whistleblower claim, constitute tort claims. See Twin City Fire Ins. Co. v. Davis, 904 S.W.2d
663, 666 (Tex. 1995) (breach of duty of good faith and fair dealing); Morgan v. Anthony, 27
S.W.3d 928, 931 (Tex. 2000) (intentional infliction of emotional distress); City of Tyler v.
Likes, 962 S.W.2d 489, 504 (Tex. 1997) (nuisance); Juhl v. Airington, 936 S.W.2d 640, 643-44 (Tex. 1996) (conspiracy); Atlas Chemical Indus., Inc. v. Anderson, 514 S.W.2d 309, 312-13 (Tex. Civ. App.—Texarkana 1974), aff’d, 524 S.W.2d 681 (Tex. 1975) (pollution). As
previously stated, a school district has immunity from suit for all torts, including intentional
torts, except for those which arise from the operation or use of a motor vehicle. See Tex. Civ.
Prac. & Rem. Code Ann. §§ 101.021, 101.051, 101.057(2); Cypress Forest Pub. Util. Dist.,
50 S.W.3d at 553-54; Kmiec, 902 S.W.2d at 122; Dunn, 796 S.W.2d at 261. Appellants’
allegations do not involve the use of a motor vehicle. Thus, DISD is immune from these tort
allegations except to the extent Appellants’ nuisance and pollution claims are actionable under
article I, section 17.
      To invoke article I, section 17, the condition about which a plaintiff complains “must
substantially interfere with a person’s use and enjoyment of land . . . .” Golden Harvest Co.
v. City of Dallas, 942 S.W.2d 682, 689 (Tex. App.—Tyler 1997, writ denied). This Court
and others have stated this as a requirement that the condition must “in some way constitute[ ]
an unlawful invasion of property or the rights of others . . . .” Cozby, 110 S.W.3d at 40
(quoting City of Saginaw v. Carter, 996 S.W.2d 1, 3 n.3 (Tex. App.—Fort Worth 1999, pet.
dism’d w.o.j.)); Shade v. City of Dallas, 819 S.W.2d 578, 581 (Tex. App.—Dallas 1991, no
writ); accord Gotcher v. City of Farmersville, 137 Tex. 12, 14, 151 S.W.2d 565, 566 (1941);
Stein v. Highland Park Indep. Sch. Dist., 540 S.W.2d 551, 553 (Tex. Civ. App.—Texarkana
1976, writ ref’d n.r.e.). Appellants contend that DISD’s conduct is actionable under these
latter cases because it interfered with their “rights” to a safe workplace. We reject this
interpretation.
      Each of the cases on which Appellants rely involved government interference with the
plaintiff’s property. See Carter, 996 S.W.2d at 3 (allegation that city “intentionally flooded
[plaintiffs’] property by diverting surface water”); Golden Harvest, 942 S.W.2d at 684 (“City
released more water from Lake Ray Hubbard than normal, admittedly flooding Golden
Harvest’s property”); Stein, 540 S.W.2d at 552 (allegation that school district constructed
building less than minimum distance from adjoining properties prescribed by applicable zoning
ordinances which “resulted in continuing and repeated trespasses by students and others upon
[plaintiff’s] property”); Atlas Chemical Indus., 514 S.W.2d at 312 (“Due to the Atlas effluent,
the creek waters [on plaintiff’s land] have been rendered useless and grass and vegetation in the
areas of the stream have been destroyed.”).
      The “rights” part of this equation arises when the government’s actions do not cause
physical damage to a plaintiff’s property but interfere with the plaintiff’s right to enjoy his
property. See, e.g., City of Sun Valley, 8 S.W.3d at 732-33 (noise and light pollution).
      Appellants do not allege that DISD’s conduct interfered in any manner with their own
property. Accordingly, their nuisance and pollution claims do not fit within the waiver of
immunity provided by article I, section 17 of the Texas Constitution. See Foster, 73 S.W.3d
at 460-61 (classroom condition not a taking under article I, section 17); Gotcher, 151 S.W.2d
at 14-15, 151 S.W.2d at 566 (municipal cesspool located on city property does not constitute a
nuisance actionable under art. I, § 17 when child entered city property and drowned therein).
      For these reasons, we conclude that DISD conclusively established its immunity from suit
on all of Appellants’ tort claims. Because DISD is immune from Appellants’ tort claims, we
need not address DISD’s alternative argument that these claims are barred by the exclusivity of
remedies provided by the workers’ compensation statutes.
The Whistleblower Claim
      DISD alleges in the no-evidence portion of its motion for summary judgment that there is
no evidence to support any element of Appellants’ whistleblower claim. DISD raised no other
grounds for summary judgment on this claim. DISD avers for the first time on appeal that
Appellants failed to properly exhaust their administrative remedies before pursing their
whistleblower claim.
Exhaustion of Remedies
      In a summary judgment appeal, we consider only those grounds “the movant actually
presented to the trial court” in the summary judgment motion. See Cincinnati Life Ins., 927
S.W.2d at 625; Fletcher, 26 S.W.3d at 74. However, exhaustion of remedies has frequently
been characterized as a jurisdictional prerequisite in a case in which an administrative remedy
is provided. See Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan, 51 S.W.3d 293, 294 (Tex.
2001) (per curiam); Permian Basin Community Ctrs. v. Johns, 951 S.W.2d 497, 502 (Tex.
App.—El Paso 1997, no writ); Gregg County v. Farrar, 933 S.W.2d 769, 777 (Tex.
App.—Austin 1996, writ denied). Issues relating to the court’s subject-matter jurisdiction may
be raised for the first time on appeal by the parties or by the court sua sponte. See Mayhew v.
Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); Tex. Assn. of Bus. v. Tex. Air Control
Bd., 852 S.W.2d 440, 445-46 (Tex. 1993).
      This discussion must be tempered, however, by the Supreme Court’s decision in Dubai
Petroleum Co. v. Kazi. 12 S.W.3d 71 (Tex. 2000). As some courts have recognized, Dubai
Petroleum effected a significant change to the jurisdictional landscape. See Hill v. Bd. of
Trustees of the Employees Ret. Sys. of Tex., 40 S.W.3d 676, 678 (Tex. App.—Austin 2001, no
pet.) (citing Sierra Club v. Tex. Nat. Resource Conservation Commn., 26 S.W.3d 684, 689
(Tex. App.—Austin 2000) (Kidd, J., concurring), aff’d, 70 S.W.3d 809 (Tex. 2002)); Godley
Indep. Sch. Dist. v. Woods, 21 S.W.3d 656, 658 n.1 (Tex. App.—Waco 2000, pet. denied).
      In Dubai Petroleum, the Supreme Court recognized that not every statutory prerequisite to
suit is a jurisdictional requirement. See Dubai Petroleum, 12 S.W.3d at 76; Sierra Club, 26
S.W.3d at 687. District courts in Texas are courts of general jurisdiction. See Dubai
Petroleum, 12 S.W.3d at 75; Sierra Club, 26 S.W.3d at 687-88. This is borne out by the
constitutional and statutory provisions which establish the jurisdiction of district courts.
      Article V, section 8 of the Texas Constitution provides in pertinent part:
District Court jurisdiction consists of exclusive, appellate, and original
jurisdiction of all actions, proceedings, and remedies, except in cases where
exclusive, appellate, or original jurisdiction may be conferred by this Constitution or
other law on some other court, tribunal, or administrative body.

Tex. Const. art. V, § 8. Section 24.008 of the Government Code provides:
The district court may hear and determine any cause that is cognizable by courts of
law or equity and may grant any relief that could be granted by either courts of law or
equity.

Tex. Gov. Code. Ann. § 24.008 (Vernon 2004).
      Because a district court is a court of general jurisdiction, “all claims are presumed to fall
within the jurisdiction of the district court unless the Legislature or Congress has provided that
they must be heard elsewhere.” Dubai Petroleum, 12 S.W.3d at 75.
      The current and former whistleblower statutes require that a plaintiff first pursue
administrative remedies before turning to the courts for relief. See Act of May 4, 1993, 73d
Leg., R.S., ch. 268, § 1, sec. 554.006(a), 1993 Tex. Gen. Laws 583, 610 (amended 1995);
Tex. Gov. Code Ann. § 554.006(a) (Vernon Supp. 2004). Accordingly, we hold that this
requirement is a jurisdictional prerequisite to the filing of a whistleblower suit in court because
it requires that a whistleblower claim first be “heard elsewhere.” Accord Tex. S. Univ. v.
Carter, 84 S.W.3d 787, 792 (Tex. App.—Houston [1st Dist.] 2002, no pet.); contra Univ. of
Tex. Med. Branch at Galveston v. Barrett, 112 S.W.3d 815, 819 (Tex. App.—Houston [14th
Dist.] 2003, pet. filed); see also Kshatrya v. Tex. Workforce Commn., 97 S.W.3d 825, 831-32
(Tex. App.—Dallas 2003, no pet.).
      Appellants allege that their DISD supervisors engaged in retaliatory conduct on several
occasions because of the reports they made to TNRCC and TWCC. The record bears out that
their complaints involve three specific instances: 
(1) the June 1, 1995 incident in Lowrey’s office where Watson and Lowrey had a
heated conversation regarding the TNRCC matter during which Lowrey temporarily
fired Watson and threatened to fire Perry;
 
(2) the July 21, 1995 incident in which Lowrey put Appellants on probation for
insubordination; and
 
(3) the August 11, 1995 incident in which Hunter reassigned Watson and Perry to the
P & G site despite their physicians’ requests to the contrary.

      Appellants instituted a grievance proceeding in accordance with DISD policy in early June
1995. The level one grievance hearing was held on June 7. The level two hearing was held in
late August/early September. They filed suit on August 31, 1995. A level three grievance
hearing was conducted in January 1996. The parties do not dispute that this grievance
proceeding has never been finally resolved.
      Under the whistleblower statutes in effect until June 15, 1995, a local government
employee (including a school district employee) generally had to exhaust his administrative
remedies before filing suit under the Act. See Act of May 4, 1993, 73d Leg., R.S., ch. 268, §
1, sec. 554.006(a), 1993 Tex. Gen. Laws 583, 610 (amended 1995) (current version at Tex.
Gov. Code Ann. § 554.006(a)). However, the exhaustion requirement did not apply if the
local government entity did not render a final decision in the administrative proceeding “before
the 31st day after the date” the employee instituted the proceeding. See Act of May 4, 1993,
73d Leg., R.S., ch. 268, § 1, sec. 554.006(d), 1993 Tex. Gen. Laws 583, 610 (amended
1995) (current version at Tex. Gov. Code Ann. § 554.006(d) (Vernon Supp. 2004)); Farrar,
933 S.W.2d at 776.
      The Legislature amended the whistleblower statutes in 1995, significantly modifying the
exhaustion of remedies requirement. The current statute provides that a public employee
“must initiate” a grievance proceeding in accordance with the government entity’s policies
before filing suit. Tex. Gov. Code Ann. § 554.006(a) (emphasis added). If the government
entity does not render a final decision in the matter “before the 61st day after the date
procedures are initiated under Subsection (a), the employee may elect to:”
(1) exhaust his administrative remedies, then file suit within 30 days after the
administrative proceedings are exhausted; or
 
(2) terminate the grievance proceeding and file suit within 90 days after the date of the
alleged retaliatory conduct.

Id. § 554.006(d). The amended whistleblower statutes apply to any “adverse personnel action
taken against a public employee on or after the effective date of this Act.” Act of May 25,
1995, 74th Leg., R.S., ch. 721, § 11, 1995 Tex. Gen. Laws 3812, 3814. The Act took effect
on June 15, 1995. See Act of May 25, 1995, 74th Leg., ch. 721, 1995 Tex. Gen. Laws 3812,
3815. Adverse personnel actions taken prior to the effective date of the statute are governed
by the former law. See Act of May 25, 1995, 74th Leg., R.S., ch. 721, § 11, 1995 Tex. Gen.
Laws 3812, 3814-15.
      Watson provided deposition testimony that Lowrey fired him at “[a]pproximately 10:00”
a.m. on June 1, 1995 then reinstated him “at quitting time” on that date. Perry was present
that morning, and Lowrey allegedly made threatening remarks to him as well. Appellants
instituted a grievance proceeding shortly thereafter. This grievance proceeding has never been
finally resolved. Because Appellants’ administrative grievance proceeding was not resolved
within thirty days after they initiated it, they did not have to await a final determination before
filing suit.


 See Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 554.006(d), 1993
Tex. Gen. Laws 583, 610 (amended 1995); Farrar, 933 S.W.2d at 776.
      The other two alleged retaliatory acts occurred after the effective date of the amendments
to the whistleblower statutes and after Appellants instituted their administrative grievance
proceeding. Thus, it could be argued that Appellants should have initiated a separate grievance
proceeding(s) with respect to these later incidents and should not have instituted suit until at
least sixty-one days after initiating such proceedings. See Tex. Gov. Code Ann. §
554.006(d). However, DISD does not contend that these subsequent incidents should be
treated separately from the June 1 incident for purposes of the exhaustion requirements.
      Moreover, DISD’s grievance procedures provide in pertinent part:
All grievances or complaints arising out of an event or a series of related events must
be addressed in one grievance filing. The grievance must be presented in writing and
should contain all pertinent information to be considered in the resolution of the
grievance. An employee is precluded from bringing separate or serial grievances or
complaints arising from any event or series of events that has or could have been
previously grieved.

Dallas Independent School District, Grievance Policies, § III, Procedural Rules (1) (1998).



      DISD’s grievance policies require that “[a]ll grievances or complaints arising out of an
event or a series of related events . . . be addressed in one grievance filing.” Id. The policies
expressly prohibit “separate or serial grievances.” Id. The retaliatory employment actions of
which Appellants complain all flow from the June 1 incident. They promptly filed an
administrative grievance after this initial incident. DISD policy prohibits the filing of “serial
grievances” regarding “related” claims. Because Appellants’ claims all flow from the June 1
incident, we hold that their whistleblower claim is governed in its entirety by the terms of the
former statute. 
      Under the former statute, Appellants could file suit if DISD did not render a final decision
in their grievance proceeding within thirty days after they began the process. This grievance
proceeding has never been finally resolved. Because Appellants’ administrative grievance
proceeding was not resolved within thirty days after they initiated it, they did not have to await
a final determination before filing suit. See Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1,
sec. 554.006(d), 1993 Tex. Gen. Laws 583, 610 (amended 1995); Farrar, 933 S.W.2d at 776. 
Accordingly, the trial court (and this Court) have jurisdiction to review the merits of the
whistleblower claim.
DISD’s No-Evidence Motion
      Appellants respond in their second point that DISD is not entitled to a no-evidence
summary judgment on their whistleblower claim because they did not have adequate time for
discovery before the summary judgment hearing, because DISD’s motion fails to specify with
sufficient particularity those elements of the claim for which it contends there is no evidence,
and because they presented sufficient controverting evidence to raise a genuine issue of
material fact on each element challenged by the motion.
      When a party contends that it has not had adequate time for discovery prior to a hearing on
a no-evidence summary judgment motion, “it must file either an affidavit explaining the need
for further discovery or a verified motion for continuance.”


 Sosebee v. Hillcrest Baptist
Med. Ctr., 8 S.W.3d 427, 431 (Tex. App.—Waco 1999, pet. denied) (quoting Tenneco, Inc. v.
Enterprise Prods. Co., 925 S.W.2d 640, 647 (Tex. 1996)); Tempay, Inc. v. TNT Concrete &
Constr., Inc., 37 S.W.3d 517, 520-21 (Tex. App.—Austin 2001, pet. denied); Green v. City of
Friendswood, 22 S.W.3d 588, 594 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).
      Appellants contended in their response to DISD’s summary judgment motion that the
motion was premature because they had not had adequate time for discovery following the
court’s withdrawal of DISD’s deemed admissions. They provided detailed explanations of the
discovery they intended to pursue. However, they did not verify the motion. Nor did they
attach an affidavit of counsel explaining the need for additional time. Appellants likewise did
not file a motion for continuance in response to DISD’s summary judgment motion.
      For these reasons, Appellants have not properly preserved this aspect of their second point
for our review. See Tex. R. App. P. 33.1(a)(1); Crow, 17 S.W.3d at 328-29; Sosebee, 8
S.W.3d at 431.
      Appellants contend that DISD’s no-evidence motion is defective because it does not
adequately specify those elements of their whistleblower claim for which there is no evidence. 
This Court has concluded that a nonmovant must object to a no-evidence motion which it
contends does not provide adequate specificity in order to present such an issue for appellate
review. See Fletcher, 26 S.W.3d at 72 n.5 (citing McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 342 (Tex. 1993); Williams v. Bank One, Tex., N.A., 15 S.W.3d 110, 117
(Tex. App.—Waco 1999, no pet.)); accord Walton v. City of Midland, 24 S.W.3d 853, 857-58
(Tex. App.—El Paso 2000, no pet.); Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190,
195 (Tex. App.—Amarillo 1999, pet. denied); contra Callaghan Ranch, Ltd. v. Killam, 53
S.W.3d 1, 3 (Tex. App.—San Antonio 2000, pet. denied).
      As noted, the San Antonio Court of Appeals does not agree with the preservation
requirement we first enunciated in Williams. It appears that this disagreement centers around
our differing interpretations of how McConnell should apply to no-evidence motions. In
McConnell, the Supreme Court discussed the issue of whether a non-movant must raise an
objection to a defective summary judgment motion to preserve the issue for appellate review. 
The Court identified three categories of defective summary judgment motions: one presenting
no grounds; one presenting only certain grounds; and one in which the grounds are unclear. 
See McConnell, 858 S.W.2d at 342-43. The Court concluded that only the latter category
requires an objection. Id.
      Concerning the first category, the Court explained that “if the grounds for summary
judgment are not expressly presented in the motion for summary judgment itself, the motion is
legally insufficient as a matter of law.” Id. at 342. Concerning the latter category, the Court
held that “[a]n exception is required should a non-movant wish to complain on appeal that the
grounds relied on by the movant were unclear or ambiguous.” Id.
      Without explicitly stating so, we have determined that a no-evidence motion which asserts
generally that there is no evidence of any element of a particular claim falls within the latter
category. See Fletcher, 26 S.W.3d at 72 n.5; Williams, 15 S.W.3d at 117; accord Walton, 24
S.W.3d at 857-58; Roth, 994 S.W.2d at 195. The San Antonio Court has determined that such
a motion fits within the former category. See Callaghan Ranch, 53 S.W.3d at 3. We continue
to believe that our approach is the correct one.



      Preservation requires not only an objection however. In the summary judgment context, a
non-movant must also obtain a ruling on an objection to the form of a motion or supporting
evidence to preserve the issue for appellate review. See Tex. R. App. P. 33.1(a)(2); Tex. R.
Civ. P. 166a(c), (f); Well Solutions, Inc. v. Stafford, 32 S.W.3d 313, 316 (Tex. App.—San
Antonio 2000, no pet.); Crow, 17 S.W.3d at 323-24. Under Rule 33.1, the non-movant
sufficiently preserves the matter if the court either “expressly or implicitly” overrules his
objection or refuses to rule on the objection. See Tex. R. App. P. 33.1(a)(2)(A); Blum v.
Julian, 977 S.W.2d 819, 823 (Tex. App.—Fort Worth 1998, no pet.); see also Well Solutions,
32 S.W.2d at 316; Frazier v. Khai Loong Yu, 987 S.W.2d 607, 609-10 (Tex. App.—Fort
Worth 1999, pet. denied) (discussing whether court implicitly sustained summary judgment
objection).
      In Blum, the Fort Worth Court of Appeals held that the fact that the court granted
summary judgment “create[d] an inference that it implicitly reviewed and overruled [the non-movant’s] objections.” Blum, 977 S.W.2d at 823-24; see also Frazier, 987 S.W.2d at 610
(facts that court granted summary judgment and stated that it had reviewed all competent
summary judgment evidence in reaching this determination “create[d] an inference that the
court implicitly sustained [the non-movant’s] objections”). The Fourteenth Court of Appeals
in Houston and the San Antonio court have differed from the Fort Worth court in this regard
by concluding that the granting of a summary judgment does not standing alone demonstrate
that a trial court has overruled or sustained an objection to summary judgment proof. See Well
Solutions, 32 S.W.3d at 317; Dolcefino v. Randolph, 19 S.W.3d 906, 925-27 (Tex.
App.—Houston [14th Dist.] 2000, pet. denied). We agree with the Houston and San Antonio
courts in this regard.
      We cannot discern from the mere fact that the court granted DISD’s no-evidence motion
that the court necessarily even considered Appellants’ objections to the form of the motion. 
Accordingly, we conclude that Appellants did not obtain a ruling sufficient to preserve their
complaint regarding the form of DISD’s motion. See Well Solutions, 32 S.W.3d at 317;
Dolcefino, 19 S.W.3d at 925-27. Accordingly, we address the merits of the motion.
      The whistleblower statutes applicable to this case provide in pertinent part:
A state agency or local government may not suspend or terminate the employment
of or discriminate against a public employee who in good faith reports a violation of
law to an appropriate law enforcement agency.

Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 554.002, 1993 Tex. Gen. Laws 583,
610 (amended 1995) (current version at Tex. Gov. Code Ann. § 554.002 (Vernon Supp.
2004)).
      On appeal, the only element for which DISD contends Appellants have no evidence is
causation. To establish causation, a whistleblower plaintiff must prove that his conduct in
reporting a violation to the appropriate law enforcement authority “must be such that, without
it, the employer’s prohibited conduct would not have occurred when it did.” Texas Dep’t of
Human Servs. v. Hinds, 904 S.W.2d 629, 636 (Tex. 1995); accord City of Fort Worth v.
Zimlich, 29 S.W.3d 62, 67 (Tex. 2000).
      If the conduct complained of “occurs not later than the 90th day after the date on which
the employee reports a violation of law, the [discriminatory conduct] is presumed, subject to
rebuttal, to be because the employee made the report.” Act of May 4, 1993, 73d Leg., R.S.,
ch. 268, § 1, sec. 554.004, 1993 Tex. Gen. Laws 583, 610 (amended 1995) (current version at
Tex. Gov. Code Ann. § 554.004(a) (Vernon Supp. 2004)). Appellants reported their
concerns about the P & G site to TNRCC on February 10. The first discriminatory conduct of
which they complain occurred on June 1, more than ninety days thereafter. However, they
made their report to TWCC on April 5, less than ninety days before the June 1 incident. Thus,
the April 5 report could be viewed as the proverbial straw which broke the camel’s back in
terms of inciting Appellants’ supervisors to take retaliatory action.
      According to Watson’s affidavit, “It became clear to [him] during the course of the [June
1] confrontation from statements made that Mr. Lowrey and Mr. Brogden were both upset
over the fact that Mr. Perry and I were suspected to be the persons who were contacting state,
federal, and local agencies about the conditions at the jobsite . . . .”
      According to Lowrey’s deposition, the June 1 encounter began when he called Watson to
his office to discuss a separate matter. While standing in the hallway discussing it, they began
to argue with one another. Lowrey continued:
Then that’s when I said, come in the office, I want to get some things straight
about who’s calling TNRCC and all the city government officials. And he went into
the office, and I began to tell him, I told him I was tired of people calling down here. 
And he doesn’t give me a chance to go any further and do anything and he got mad at
me and said he wasn’t going to discuss this in front of me anymore without proper
[re]presentation.

      Watson placed a call to the Texas State Teachers Association for assistance, but no one
was available at that moment to come to the office. He reported this to Lowrey and continued
to insist that he did not want to discuss the TNRCC matter without representation. The
conversation grew more heated, and Lowrey called Strobel to come down and discuss the
matter.
That’s when [Watson] began to want to leave. Said, I’m just going back on the
job or something like that. I don’t know. But he wanted to leave. And I told him, I
said, you don’t need to leave; we need to sit here and get this worked out; Mr. Strobel
will be here just as soon as he can. And he said he didn’t want to. And then Jeff
Brogden came in about the time that we were talking about that.

      . . . .
 
He persisted that he wanted to [leave]. I said, give me your badge and give me
your keys because I don’t want you to leave. And they’re not supposed to be on any
other facility without their identification. And then I told him, I made the comment
that this is insubordination that you’re doing and you might get fired for this, so
please stay here. . . .

At that point, Lowrey physically removed Watson’s pager from his belt and his badge from his
shirt pocket.
      DISD contends that this and other testimony establishes that the reason for the complained-of personnel actions was Watson’s insubordination. Although this evidence could support a
finding that Lowrey engaged in the complained-of conduct because of insubordination, the
evidence does not conclusively establish this fact.
      However, we review the evidence offered in connection with a no-evidence summary
judgment motion in the light most favorable to the non-movant, disregarding all contrary
evidence and inferences. See Robinson, 998 S.W.2d at 410; Moore, 981 S.W.2d at 269. 
When we review the evidence in this light, particularly Lowrey’s testimony that he called
Watson into his office because he “wanted to get some things straight about who’s calling
TNRCC,” we conclude that Appellants produced more than a scintilla of probative evidence to
raise a genuine issue of material fact on the element of causation. Id. Accordingly, we sustain
Appellants’ second point.
THE INDIVIDUAL APPELLEES’ SUMMARY JUDGMENT
      In their supplemental summary judgment motion, the individual Appellees contend that
they are entitled to judgment as a matter of law on Appellants’ tort claims because of DISD’s
immunity.
      Section 101.106 of the Tort Claims Act provides:
A judgment in an action or a settlement of a claim under this chapter bars any
action involving the same subject matter by the claimant against the employee of the
governmental unit whose act or omission gave rise to the claim.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106 (Vernon 1997). Under section 101.106,
government employees are immune from liability on a plaintiff’s tort claims to the extent the
governmental unit by which they are employed is adjudicated to be immune from such claims. 
See Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 343-44
(Tex. 1998); Texas Dep’t of Mental Health & Mental Retardation v. Pearce, 16 S.W.3d 456,
459 (Tex. App.—Waco 2000, pet. dism’d w.o.j.).
      We have already determined that DISD has immunity from suit on all of Appellants’
common-law tort claims. Accordingly, the individual Appellees’ are immune from any
liability on these claims. Thus, we overrule Appellants’ first point insofar as it challenges the
summary judgment granted in favor of the individual Appellees on Appellants’ tort claims.
      Appellants state in their brief that their whistleblower claim is asserted against only DISD. 
Accordingly, we overrule their first point insofar as it could be construed to challenge the
summary judgment granted in favor of the individual Appellees on the whistleblower claim.
CONCLUSION
      DISD and the individual Appellees established their entitlement to judgment as a matter of
law on all of Appellants’ tort claims. Accordingly, we affirm the judgment on the tort claims. 
Appellants presented more than a scintilla of evidence to defeat DISD’s no-evidence summary
judgment motion on their whistleblower claim. Accordingly, we reverse the judgment on
Appellants’ whistleblower claim against DISD and remand that portion of this cause to the trial 

court for further proceedings consistent with this opinion.
 
FELIPE REYNA
                                                                   Justice
Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna



      (Chief Justice Gray dissenting)
Affirmed in part, reversed and remanded in part
Opinion delivered and filed March 24, 2004
[CV06]